1  SEYFARTH SHAW LLP
   Dana L. Peterson (SBN 178499)
2  dpeterson@seyfarth.com
   David J. Kim (SBN 349802)
3  dakim@seyfarth.com
   2029 Century Park East, Suite 3500
4  Los Angeles, California 90067-3021
   Telephone:   (310) 277-7200
5  Facsimile:    (310) 201-5219

6  Attorneys for Defendants
   BEAUTY INDUSTRY GROUP, OPCO LLC;
7  BELLAMI HAIR, LLC and
   RANDILYN DELA CRUZ

8

9

10              UNITED STATES DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12

| 13 | KAREN SANCHEZ, an individual, | Case No. |
|---|---|---|
| 14 | Plaintiff, | [Los Angeles Superior Court Case No. 24STCV03811] |
| 15 | v. | **DECLARATION OF DANA L. PETERSON IN SUPPORT OF DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT** |
| 16 | BEAUTY INDUSTRY GROUP, OPCO LLC, BELLAMI HAIR, LLC, RANDILYN DELA CRUZ, and DOES 1 through 100, inclusive, | |
| 17 | | |
| 18 | Defendants. | *[Filed concurrently with Notice of Removal; Civil Cover Sheet; Declarations of Randilyn Dela Cruz, Darin Jacobs and Brian Garcia in support thereof; Notice of Interested Parties; and Defendants' Corporate Disclosure Statement]* |
| 19 | | |
| 20 | | |
| 21 | | |

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>DECLARATION OF DANA L. PETERSON</u>

I, Dana L. Peterson, hereby declare:

1.    I am an attorney admitted to practice in the State of California as well as the United States District Court, Central District , and I am a Partner at the law firm of Seyfarth Shaw LLP. I am one of the Seyfarth lawyers representing Defendants Beauty Industry Group Opco, LLC ("BIG Opco"), Bellami Hair, LLC ("Bellami Hair), and Randilyn Dela Cruz ("Dela Cruz") (or collectively, "Defendants") in the above-captioned lawsuit filed on behalf of Plaintiff Karen Sanchez ("Plaintiff").  All of the pleadings and correspondence in this lawsuit are maintained in our office in the ordinary course of business under my direction and control. I have reviewed the pleadings and correspondence in preparing this declaration.

2.    **Exhibits A, B, and C** constitute all of the pleadings that have been served on Defendants or filed by Defendants.

3.    Attached hereto as **Exhibit D** is a true and correct copy of the LexisNexis public records search through March 19, 2024, indicating that Plaintiff resided in California at all times relevant in this action.  The public records search does not show addresses for Plaintiff other than in the State of California during her employment with Defendant or thereafter.

4.    Attached hereto as **Exhibit E** are true and correct copies of jury verdict reports for cases that have issues similar to Plaintiff's allegations that she was discriminated against and wrongfully terminated.

5.    Attached hereto as **Exhibit F** are true and correct copies of jury verdict reports for cases that have awarded emotional distress damages in excess of $75,000 in cases involving discrimination.

6.    Attached hereto as **Exhibit G** are true and correct copies of jury verdict reports for cases that have awarded attorneys' fees in excess of $75,000 in cases involving discrimination.

309794970v.1

7.    I anticipate depositions being taken in this case and that ultimately, Defendants will file a Motion for Summary Judgment.  I have been licensed to practice law since December 1995.  In the last twenty-nine years, I estimate that I have represented employers in over 150 different employment lawsuits.  Based on my experience, Plaintiff's attorneys' fees in employment discrimination cases often exceed $75,000.  In this regard it is more likely than not that the fees will exceed $75,000 through discovery and a summary judgment hearing, and the fees would certainly exceed $75,000 if the case proceeds to trial.

I declare under penalty of perjury under the laws of California and the United States that the foregoing is true and correct.

This declaration was executed on March 21, 2024, at Los Angeles, California.

Dana L. Peterson

PETERSON DECLARATION IN SUPPORT OF DEFS' NOTICE OF REMOVAL

309794970v.1

# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*
Electronically FILED by
Superior Court of California,
County of Los Angeles
2/15/2024 12:16 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By S. Bolden, Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BEAUTY INDUSTRY GROUP,OPCO, LLC, BELLAMI HAIR, LLC, RANDILYN DELA CRUZ, and DOES 1 through 100, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
KAREN SANCHEZ

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Los Angeles Superior Court

111 North Hill Street, Los Angeles, California 90012

CASE NUMBER:
*(Número del Caso):*
24STCV03811

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael Akopyan, Akopyan Law Firm, APC, 2600 W. Olive Ave. Ste. 500, Burbank, CA 91505 (818) 509-9975

DATE: 02/15/2024
*(Fecha)* David W. Slayton, Executive Officer/Clerk of Court

Clerk, by
*(Secretario)* S. Bolden , Deputy
*(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* BEAUTY INDUSTRY GROUP, OPCO, LLC
   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☒ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

Michael Akopyan, State Bar No. 239574
AKOPYAN LAW FIRM, A.P.C.
2600 West Olive Ave. Ste. 500
Burbank, California 91505
Telephone:    (818) 509-9975
Facsimile:    (818) 804-3686
E-Mail:    michael@akopyanlaw.com

Attorneys for Plaintiff KAREN SANCHEZ

Electronically FILED by
Superior Court of California,
County of Los Angeles
2/14/2024 3:16 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By D. Williams, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

KAREN SANCHEZ

Plaintiff,

v.

BEAUTY INDUSTRY GROUP,
OPCO, LLC, BELLAMI HAIR, LLC,
RANDILYN DELA CRUZ, and DOES
1 through 100, inclusive,

Defendants.

Case No:    24STCV03811

**COMPLAINT FOR:**

1. **Wrongful Termination in Violation of Public Policy**

2. **Discrimination in Violation of Fair Employment and Housing Act**

3. **Retaliation in Violation of Fair Employment and Housing Act**

4. **Failure to Engage in Int. Process in Violation of Fair Employment and Housing Act**

5. **Failure to Provide Reasonable Accommodation in Violation of Fair Employment and Housing Act**

6. **Failure to Prevent Discrimination and Retaliation in Violation of Fair Employment and Housing Act**

7. **Retaliation in Violation of <u>Labor Code</u> § 1102.5**

## <u>JURY TRIAL DEMANDED</u>

Plaintiff, KAREN SANCHEZ an individual, ("Plaintiff" and/or "Sanchez") is informed and believes, and based thereon alleges as follows:

- 1 -



## THE PARTIES

1.    Plaintiff is and at relevant times alleged was a resident of the State of California, an "employee" within the meaning of both the Fair Employment and Housing Act ("FEHA") and Cal. Labor Code §1102.5.

2.    Defendant BELLAMI HAIR, LLC ("Bellami") is and at all relevant times was a Limited Liability Company organized and existing under the laws of the State of Delaware, and an "employer" within the meaning of the FEHA and Cal. Labor Code § 1102.5.

3.    Defendant BEAUTY INDUSTRY GROUP, OPCO, LLC ("BIG") is and at all relevant times was a Limited Liability Company organized and existing under the laws of the State of Utah, and an "employer" within the meaning of the FEHA and Cal. Labor Code §1102.5.

4.    Defendant RANDILYN DELA CRUZ ("Cruz") is and at all relevant times was an individual residing in the State of California, and an "employer" within the meaning of the FEHA and Cal. Labor Code §1102.5. Cruz was at all relevant times an officer, director and/or managing agent of the Defendants within the meaning of Cal. Civil Code § 3294. Cruz was at all relevant times a person acting on behalf of each Defendant within the meaning of Cal. Labor Code §1102.5, a person with authority over Sanchez within the meaning of Cal. Labor Code §1102.5, and a person with authority over employees who had authority to investigate, discover, or correct the violation or noncompliance within the meaning of Cal. Labor Code §1102.5.

5.    Sanchez is unaware of the true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 100 (hereinafter "Does" and/or "Defendants"), inclusive, and therefore sues said Does by such fictitious names. Sanchez will seek leave of Court to amend this Complaint to show the true names and capacities of such Does when the same has been ascertained.   Sanchez is informed and believes that each of the fictitiously named Defendants is responsible to her for the injuries she suffered as alleged herein.

/ / /

/ / /



- 2 -

COMPLAINT AND DEMAND FOR TRIAL BY JURY

## GENERAL ALLEGATIONS

6.     Plaintiff is informed and believes that at all times herein mentioned, Defendants were consolidated, and/or merged, and/or successor-in-interests with one another in that (1) there is an express or implied agreement of assumption, and/or (2) the transaction amounts to a consolidation or merger of the two corporations, and/or (3) the purchasing corporation is a mere continuation of the seller, and/or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.  [Ray v. Alad Corporation (1977) 19 Cal.3d 22, 28; McClellan v. Northridge Park Townhome Owners Ass'n, Inc. (2001) 89 Cal.App.4th 746, 753-754; Moe v. Transamerica Title (1971) 21 Cal.App.3d 289 holds that the corporate existence of a merged corporation is preserved to the extent that it may be served with process or called upon to defend an action in that "[c]onsolidation does not create an entirely new entity but merely directs the blood of the old corporation into the veins of the new, the old living in the new."

7.     Plaintiff is informed and believes, and based thereon alleges as follows: There exists, and at all times herein mentioned there existed, a unity of interest and ownership between all Defendants such that any individuality and separateness between them have ceased, and each of them is the alter ego of the others. Despite the formation of their purported existence as separate legal entities, all of the Defendants, in reality, are one and the same. While they are all really one and the same, they were segregated to appear as though separate and distinct for purposes of perpetrating a fraud, circumventing a statute, or accomplishing some other wrongful or inequitable purpose. Their business affairs were so mixed and intermingled that they cannot be reasonably be segregated and are in inextricable confusion. Each Defendant is completely dominated and controlled by the other Defendants, who committed the frauds and violated the laws as set forth in this Complaint and hid behind the fiction of separate legal existence to accomplish wrongful or inequitable purpose(s). At all times relevant the entity Defendants were a mere shell and conduit for the conduct of certain of defendants' affairs, and are, and were alter egos. The recognition of their separate existence would not promote justice, in that it would permit defendants to insulate themselves from liability to Plaintiff and/or others for the statutory and other violations. The

1  existence of the above-identified Defendants should be disregarded in equity and for the ends of

2  justice because such disregard is necessary to avoid fraud and injustice.

3       8.       Plaintiff is informed and believes and based thereon alleges as follows: Each of the

4  Defendants together with others, supervised Plaintiff's work and exercised control over her and

5  her work and, thus, also completely dominated and controlled Plaintiff's performance of her

6  employment duties. As a result, Plaintiff is informed and believes, and based thereon alleges that

7  each Defendant is her joint employer by virtue of a joint enterprise, and that Plaintiff was employed

8  by each Defendant.  Plaintiff performed services for and/or to the mutual benefit of all of the

9  Defendants, and they each shared control of Plaintiff as an employee, either directly or indirectly,

10  and the manner in which their business was and is conducted.

11       9.       Plaintiff is informed and believes, and based thereon alleges that at all times

12  mentioned Defendants, and each of them, were the agents (ostensible and actual) of the other

13  named Defendants (or others yet unnamed), and in doing the things herein alleged, were acting

14  within the course and scope of such agency and with the conspiracy, permission, consent,

15  authorization, and ratification of each of the other Defendants (and/or other unnamed persons).

16  Any reference to "Defendants" or any named Defendant is also considered in this pleading to be a

17  reference to Does 1 through 100 as well.

18       10.      The amount in controversy is over the jurisdictional amount classifying this as an

19  unlimited matter. Venue is proper in this Court because, *inter alia*, the unlawful employment

20  practices herein alleged (but for which Plaintiff would have worked within the County of Los

21  Angeles), were committed within the County of Los Angeles. Additionally, venue is proper in this

22  Court because the Defendants' obligations and liability arise therein and because work performed

23  by Plaintiff, that makes up the subject of this action, was performed in the County of Los Angeles.

24

25  / / /

26

27  / / /

28



- 4 -
COMPLAINT AND DEMAND FOR TRIAL BY JURY

**INTRODUCTION**

11.    On October 11, 2023, Defendants terminated Sanchez from her employment for several unlawful reasons, including but not limited to Sanchez' disability, and in retaliation to Sanchez' complaints.  The following is an outline of some of the unlawful discrimination, and retaliation suffered by Sanchez, but since the illegal acts occurred on a repeated basis over a period of time, this outline is by no means an exhaustive list of all unlawful acts:

**FACTUAL ALLEGATIONS**

12.    At relevant times herein alleged, the Defendants marketed and sold extensions and other hair products.  In or around July of 2019, Sanchez was hired to work as Defendants' Products Development Manager in Chatsworth, California.  Her compensation included a base salary of $85,000.00 and provided employment benefits such as medical, dental, vision, and 401K benefits.

13.    At all times during her employment with Defendants, Sanchez was an excellent employee.  Her hard work and contributions were recognized by Defendants.  In July of 2022 Sanchez was promoted to the role of Quality Control.  Sanchez was never reprimanded for inappropriate conduct, poor performance, or other related issues.

14.    On December 9, 2022, Sanchez was severely injured in a car crash.  Sanchez' injuries included both physical injuries (e.g. shoulder injury) and non-physical injuries (such as anxiety).  Sanchez' injuries made it difficult for her to engage in major life activities and constituted a disability within the meaning of the FEHA. Sanchez promptly informed Defendants regarding her injuries.  Defendants were on notice of Sanchez disability.  Defendants considered and treated Sanchez like a disabled employee. Defendants treated Sanchez as an employee having a condition which was limiting, and/or would limit her ability to participate in major life activities. At all relevant times Sanchez was able to perform, with or without reasonable accommodation, the essential job duties of her own job, as well as other jobs for Defendants.

/ / /

/ / /



- 5 -
COMPLAINT AND DEMAND FOR TRIAL BY JURY

15.    Sanchez asked Defendants to accommodate her disability by, *inter alia*, allowing her to telecommute (i.e. work from home) at least temporarily. Defendants easily could have, and under the FEHA should have, granted Sanchez' request. Sanchez did not need to be physically present on site to do her job. During COVID Sanchez worked remotely for many months. Many if not most of the other employees routinely worked from home. Unfortunately, Sanchez was singled out and denied equal treatment in terms of being allowed to telecommute. For instance, on December 13, 2022, Sanchez emailed her boss Executive Director Cruz as follows: "*I'm still feeling sore from the accident last Friday. Do you mind if I work from home the rest of the week...*" Cruz responded by discouraging Sanchez from pursuing the accommodation of telecommuting and cautioned her "... *to be careful going into the new year with attendance and where we're working from. There's certain situations we can be flexible, but there will be constant monitoring for justification of raises/bonus'/promotions in 2023. Unfortunately, I've had to report current status of the team since Denise and I are the only ones in office this week which put us in the red as a department.*" In this way Cruz threatened to withhold raises, bonuses, and promotions if Sanchez continued to request the accommodation of telecommuting.

16.    Additionally, Sanchez needed and/or requested the accommodation of being allowed to modify her daily work schedule on those days where she had conflicting doctor visit(s), and/or physical therapy visit(s). For months after Sanchez' car crash, she underwent medical treatment, and received continuing medical care for her injuries which included but was not limited to doctor visit(s), and physical therapy visit(s). Sanchez tried to schedule these visits to take place outside of normal business hours, and on days when Sanchez had no choice but to leave work early to go to a medical appointment, she worked in the evening to make up the time. Given the nature of her position there was no business necessity for Sanchez to perform work exclusively during normal business hours. As a salaried professional Sanchez was entitled to a certain degree of discretion. Less than a month before Sanchez' injury, Cruz had confirmed as much in an email to Sanchez which said that "*as long as you're running your full 40 hours, I have no qualms as to when you head home.*" Yet just a couple of months later when Sanchez actually needed the accommodation for her disability, Cruz started tracking, calendaring, documenting, and



- 6 -
COMPLAINT AND DEMAND FOR TRIAL BY JURY

1    questioning Sanchez' time away from the office for doctor's appointments. For example, on May
2    1, 2023 she wrote Sanchez as follows: "*I've noticed you have quite a few doctor's appointments*
3    *that are scheduled every week, ... How are you making up those hours?..... Should I plan for these*
4    *appointments to be recurring every month?...*" Sanchez explained that she "*schedule[d her]*
5    *... appointments as early as possible or as late in the day as doctors' schedules allow to affect my*
6    *work day as little as possible. And make up the hours by working longer during the week, although*
7    *I give myself a 30min buffer and often come in earlier...* " Despite Sanchez' explanation, her doctor
8    visits were simply too much of an inconvenience for Defendants to bear.

9        17.    Moreover, Sanchez asked Defendants to accommodate her disability by, *inter alia*,
10   lightening her workload in accordance with her doctor's orders. Sanchez' doctors imposed the
11   following restrictions: "*Due to my patient's injury, she should be placed on light duty for labor*
12   *and physical activities. This includes no heavy lifting over 5 lbs., bending, lifting, and twisting.*"
13   "*This patient is placed on modified activity at work...* " Regrettably Defendants failed to observe
14   Sanchez' medical restrictions, and instead required her to perform physical work outside of her
15   restrictions, like for example moving pallets of inventory.

16       18.    Defendants had an obligation to engage in the good faith interactive process
17   required by the FEHA. At no time did Defendants engage in a good-faith interactive process with
18   Sanchez to determine whether it would be possible to implement effective reasonable
19   accommodations for Sanchez' disability. Sanchez was willing to participate in and/or requested to
20   participate in an interactive process to determine whether reasonable accommodation could be
21   made but the same could not be said about Defendants. Defendants failed to ascertain how
22   Sanchez' limitations could be overcome with a reasonable accommodation and/or refused to
23   provide a reasonable accommodation. Defendants failed to engage Sanchez in the requisite
24   interactive process. Defendants failed to make an effort to even identify, much less provide a
25   reasonable accommodation for Sanchez' disability. Instead, Defendants discriminated against
26   Sanchez on the basis of her disability and engaged in a course of conduct which eventually led to
27   the termination of her employment.

28

19.     Cruz responded to Sanchez' requests for reasonable accommodations by putting her on a sham Performance Improvement Plan ("PIP").  Cruz did not identify any deficiency in Sanchez' performance.  She deliberately couched the PIP in ambiguous wishy-washy language because Sanchez' performance was beyond reproach.  Cruz tried to cloak this discriminatory PIP with a shroud of legitimacy, but the very content of her PIP evidenced disability discrimination and/or retaliation.  For example, the PIP states: "*There is currently no WFH* [i.e. Work From Home] *policy for Quality team members…"*  In other words, Cruz responded to Sanchez' request for the accommodation of working from home in the form a PIP that told her she could not do so.  Similarly, Cruz criticized Sanchez' doctors visits by writing in the PIP that "*Any makeup hours need to be made within the same work week, in the office…. Email manager date and time of PT0/OOO requests with plans for the responsibilities of your role (PTO is vacation, OOO requests are made when you do not have PTO or Sick Leave available to allocate, and you will make up that time during the work week on another day.*"  Clearly Cruz was unhappy with Sanchez' doctor(s) visits. Other examples abound.

20.     On several occasions Sanchez opposed and complained about the Defendants' total disregard of Sanchez' disability, and complete failure to provide a reasonable accommodation:

21.     On May 6, 2023, Sanchez sent an email to Defendants' Executive Director of Human Resources Brian Garcia, and Defendants' Human Resources Manager Dawn Goodwin which in part stated as follows: "*As we discussed during our recent conversation…I understand that the new company policy requires all employees to be in the office, but it appears that flexibility has been granted to all employees in my department except for me. This lack of consistency is causing me significant concern. Moreover, I received the Performance Improvement Plan (PIP) on May 30th, … My doctor appointments are related to the shoulder injury I sustained in a car accident, which my director knows. I communicated to my director on May 2nd, 2023, that I add a time buffer for my appointments, but I often spend less time in these appointments.  It has been two weeks since I requested to use my PTO or Sick Time for my doctor appointments, but this policy has not been extended to my colleagues, which raises concerns about targeting and unequal treatment. Despite performing my job duties effectively throughout the COVID pandemic and the*

- 8 -

COMPLAINT AND DEMAND FOR TRIAL BY JURY

*hybrid schedule, I am troubled by the lack of consistency where other colleagues enjoy flexibility....I urgently request your immediate attention to these matters and a thorough investigation into the alleged discrimination and policy inconsistencies. It is of utmost importance to me that these issues are promptly addressed and the necessary steps are taken to ensure a fair and inclusive working environment for all employees. Furthermore, I respectfully request the removal of the Performance Improvement Plan (PIP) from my records, as I believe it is unjust and not reflective of my performance. I am committed to my work and have consistently demonstrated my dedication and ability to fulfill my job responsibilities effectively*."

22.    On June 20, 2023, Sanchez sent another email to Garcia and Goodwin which stated in part as follows: "*I wanted to address some concerns regarding the leadership of the Executive Director of our department Randi... These issues have raised significant concerns for me as I am fully committed to performing my job exceptionally and contributing to the company's success....I would like to address the inequity in remote working opportunities. While some colleagues have the flexibility to work from home, my request for remote work has been denied. Furthermore, I have observed instances where even our supervisor, Randy, has taken work-from-home days without informing the team, sometimes multiple times a week, such as the last week of April when she worked remotely on both the 24th and 25th, including this entire week. It was essential to bring these concerns to your attention to ensure transparency and a healthy work environment...*" On that same date Sanchez forwarded to Garcia and Goodwin copies of her doctors' notes.

23.    Separate and apart from her written complaints, Sanchez also complained to Defendants' Human Resources Department verbally.  She repeatedly complained to Human Resources about the fact that she was being singled out, targeted, and discriminated against.

24.    However, Sanchez' complaints about the unlawful discrimination, and retaliation was not the first time that she opposed unlawful activities.  During the course of and scope of her employment with Defendants, during the period of time preceding her PIP, Sanchez had discovered facts and information, and reasonably came to believe that Defendants were engaged in a pattern and practice of unlawful practices, including without limitation the practice of fraud, deceit, and false advertising.  More specifically Defendants falsely, fraudulently, and deceptively



advertised that their product was made of cuticle hair, whereas Defendants' product was not made of hair with cuticle follicles. After Sanchez discovered Defendants' unlawful practices, she repeatedly protested and complained to Cruz regarding the same. Cruz was a person who had authority over Sanchez, and had authority to investigate, discover, and/or correct the above-listed unlawful practice that Sanchez complained of.

25.     In response to, and as a result of Sanchez' herein-discussed complaints, Defendants engaged in a course of conduct which taken as a whole materially and adversely affected the terms and conditions of Sanchez' employment and was consistent with a retaliatory intent. Defendants retaliated against Sanchez by taking several adverse employment actions against her which ultimately culminated in the termination of her employment.

26.     On October 11, 2023, Defendant terminated Sanchez' employment. The Defendants excuse for terminating Sanchez' employment is contrived, false, fabricated, and pretextual. The real reason why Defendants fired Sanchez was her disability, request for a reasonable accommodation for her disability, and repeated complaints mentioned herein. A retaliatory animus was a substantial factor in Defendants' decision to terminate Sanchez.

27.     Defendants had a duty to prevent the discrimination and retaliation suffered by Sanchez. Defendants failed to take reasonable steps to prevent the same from occurring.

28.     In doing the things herein alleged, Defendants, and each of them breached and acted in clear derogation of the herein-described duties which they owed to Sanchez as alleged herein; knew, or should have known, that their respective failure to exercise due care as alleged herein would cause Sanchez severe emotional distress; acted with the intent to cause injury to Sanchez; acted intentionally, willfully, maliciously, and with a wanton and reckless disregard of the consequences to Sanchez warranting an assessment of punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct.

29.     In doing the things herein alleged, Defendants acted with malice, and/or oppression, and/or fraud, and/or with conscious disregard for Sanchez' rights and/or with the intent, design and purpose of injuring Sanchez. The Defendants and each of them acted for the purpose of causing Sanchez to suffer harm, and/or severe emotional distress and/or physical distress, and/or



1  are guilty of oppression and malice, justifying an award of exemplary and punitive damages. The

2  entity defendants, through their officers, managing agents and/or supervisors, authorized,

3  condoned and/or ratified the unlawful conduct of the other employees. By reason thereof, Sanchez

4  is entitled to exemplary damages from all Defendants in a sum according to proof at trial.

5        30.    As a direct and proximate result of the herein-described actions of Defendants,

6  Sanchez has suffered and/or will suffer a loss of earnings and other employment benefits.

7        31.    Moreover, as a direct and proximate result of Defendants' conduct Sanchez

8  suffered and/or continues to suffer, *inter alia*, anxiety, depression, nervousness, humiliation,

9  anguish, distress, stress, grief, embarrassment, disappointment, worry, pain and suffering.

10        32.    Additionally, as a further, direct and proximate result of the herein-described

11  actions of the Defendants, Sanchez has been compelled to retain the services of counsel in an effort

12  to enforce her statutory rights, and has thereby incurred, and will continue to incur, legal fees and

13  costs, the full nature and extent of which are presently unknown. Sanchez requests that attorneys'

14  fees be awarded pursuant to the applicable provisions of the FEHA and/or the Labor Code.

15        33.    Sanchez has exhausted her administrative remedies. Sanchez timely filed charges

16  against the Defendants and each of them with the California Civil Rights Department ("CRD").

17  Within one year of the filing of this Complaint, the CRD issued Sanchez a right to sue notice

18  authorizing this lawsuit.

19        34.    Sanchez is informed and believes, and based thereon alleges, that in addition to the

20  practices enumerated above, Defendants may have engaged in other unlawful employment

21  practices which are not yet fully known. At such time as such unlawful employment practices

22  become known to her Sanchez will seek leave of Court to amend this Complaint.

23                    **FIRST CAUSE OF ACTION**

24            **Wrongful Termination in Violation of Public Policy**

25                **(Against Bellami, BIG, and Does)**

26        35.    Plaintiff re-alleges and incorporates herein by this reference, as though set forth in

27  full, each and every allegation contained in each and every one of the above paragraphs.

28



- 11 -

COMPLAINT AND DEMAND FOR TRIAL BY JURY

36.     The above allegations establish the following: Plaintiff was employed by Defendants.  Plaintiff was discharged from employment by Defendants for reasons that violate the public policy embodied in the laws of this state.

37.     As a direct and proximate result of the Defendants' actions Plaintiff, has sustained direct, indirect, incidental, consequential, general, special, economic and non-economic compensatory damages in excess of $1,000,000.00, according to proof at trial.

38.     Furthermore, Plaintiff is entitled to punitive damages from each Defendant in a sum proven necessary to punish and make an example of said Defendant for Defendant's malicious and oppressive conduct and that conduct which reflects a conscious disregard of the Plaintiff's rights, in an amount which exceeds $1,000,000.00, according to proof at trial.

## SECOND CAUSE OF ACTION

### Discrimination in Violation of Fair Employment and Housing Act

### (Against Bellami, BIG, and Does)

39.     Plaintiff re-alleges and incorporates herein by this reference, as though set forth in full, each and every allegation contained in each and every one of the above paragraphs.

40.     The herein alleged facts establish the following: Each Defendant was an employer within the meaning of the FEHA.  Plaintiff was employed by Defendants.  Each Defendant knew that Plaintiff had a disability which made it difficult for her to engage in major life activities.  Each Defendant considered and treated Plaintiff as if she had a disability which made it difficult for her to engage in major life activities. Plaintiff had a disability which made it difficult for her to engage in major life activities.  Each Defendants treated Plaintiff less favorably based on her actual and/or perceived disability.   Plaintiff was able to perform the essential job duties with or without reasonable accommodation.  Defendants terminated Plaintiff's employment.  Plaintiff's disability and/or Defendant's belief regarding the same, was a substantial motivating reason for the discharge. Plaintiff was harmed. Defendants conduct was a substantial factor in causing said harm.

41.     As a direct and proximate result of the Defendants' actions Plaintiff, has sustained direct, indirect, incidental, consequential, general, special, economic and non-economic compensatory damages in excess of $1,000,000.00, according to proof at trial.



- 12 -

COMPLAINT AND DEMAND FOR TRIAL BY JURY

1   42.   Furthermore, Plaintiff is entitled to punitive damages from each Defendant in a sum
2   proven necessary to punish and make an example of said Defendant for Defendant's malicious and
3   oppressive conduct and that conduct which reflects a conscious disregard of the Plaintiff's rights,
4   in an amount which exceeds $1,000,000.00, according to proof at trial.

5   **THIRD CAUSE OF ACTION**
6   **Retaliation in Violation of Fair Employment and Housing Act**
7   **(Against Bellami, BIG, and Does)**

8   43.   Plaintiff re-alleges and incorporates herein by this reference, as though set forth in
9   full, each and every allegation contained in each and every one of the above paragraphs.

10   44.   The herein alleged facts establish the following: Each Defendant was an employer
11   within the meaning of the FEHA.  Plaintiff was employed by Defendants: Plaintiff engaged in
12   protected activity within the meaning of the FEHA.  Defendants engaged in conduct that taken as
13   a whole, materially and adversely the terms and conditions of Plaintiff's employment. Ultimately,
14   Plaintiff was discharged by Defendants. Plaintiff's engagement in a protected activity was a
15   motivating reason for the Defendants' decision to discharge Plaintiff and terminate her
16   employment.

17   45.   As a direct and proximate result of the Defendants' actions Plaintiff, has sustained
18   direct, indirect, incidental, consequential, general, special, economic and non-economic
19   compensatory damages in excess of $1,000,000.00, according to proof at trial.

20   46.   Furthermore, Plaintiff is entitled to punitive damages from each Defendant in a sum
21   proven necessary to punish and make an example of said Defendant for Defendant's malicious and
22   oppressive conduct and that conduct which reflects a conscious disregard of the Plaintiff's rights,
23   in an amount which exceeds $1,000,000.00, according to proof at trial.

24
25   / / /
26
27   / / /
28



- 13 -
COMPLAINT AND DEMAND FOR TRIAL BY JURY

## FOURTH CAUSE OF ACTION

**Failure to Engage in Good Faith Interactive Process in Violation of the Fair Employment and Housing Act**

**(Against Bellami, BIG, and Does)**

47.    Plaintiff re-alleges and incorporates herein by this reference, as though set forth in full, each and every allegation contained in each and every one of the above paragraphs.

48.    The facts herein alleged establish the following: Each Defendant was an employer covered by the FEHA. Plaintiff was employed by Defendants; Plaintiff had a disability which was known to Defendants. Plaintiff requested an accommodation so that she could perform the essential job requirements. Each Defendant was on notice of the need to provide Plaintiff with an accommodation so that she could perform the essential requirements of her job. Plaintiff was willing to participate in an interactive process to determine whether reasonable accommodation could be made so that she would be able to perform the essential job requirements. Defendants failed to participate in a timely good-faith interactive process with Plaintiff to determine whether reasonable accommodation could be made. Plaintiff was harmed. Defendants' failure to engage in a good-faith interactive process was a substantial factor in causing Plaintiff's harm.

49.    As a direct and proximate result of the Defendants' actions Plaintiff, has sustained direct, indirect, incidental, consequential, general, special, economic and non-economic compensatory damages in excess of $1,000,000.00, according to proof at trial.

50.    Furthermore, Plaintiff is entitled to punitive damages from each Defendant in a sum proven necessary to punish and make an example of said Defendant for Defendant's malicious and oppressive conduct and that conduct which reflects a conscious disregard of the Plaintiff's rights, in an amount which exceeds $1,000,000.00, according to proof at trial.

/ / /

/ / /

- 14 -
COMPLAINT AND DEMAND FOR TRIAL BY JURY

**FIFTH CAUSE OF ACTION**

**Failure to Provide Reasonable Accommodation in Violation of the Fair Employment and**

**Housing Act**

**(Against Bellami, BIG, and Does)**

51.    Plaintiff re-alleges and incorporates herein by this reference, as though set forth in full, each and every allegation contained in each and every one of the above paragraphs.

52.    The facts herein alleged establish the following: Each Defendant was an employer covered by the FEHA. Plaintiff was employed by Defendants. Plaintiff had a disability which was known to Defendants. Plaintiff suffered from a disability because she had a condition that limited a major life activity. Defendants treated Plaintiff as someone with a disability.  Defendants failed to provide a reasonable accommodation to Plaintiff. Plaintiff was harmed.  Defendants' failure to provide reasonable accommodations to Plaintiff was a substantial factor in causing that harm.

53.    As a direct and proximate result of the Defendants' actions Plaintiff, has sustained direct, indirect, incidental, consequential, general, special, economic and non-economic compensatory damages in excess of $1,000,000.00, according to proof at trial.

54.    Furthermore, Plaintiff is entitled to punitive damages from each Defendant in a sum proven necessary to punish and make an example of said Defendant for Defendant's malicious and oppressive conduct and that conduct which reflects a conscious disregard of the Plaintiff's rights, in an amount which exceeds $1,000,000.00, according to proof at trial.

**SIXTH CAUSE OF ACTION**

**Failure to Prevent Discrimination and/or Retaliation in Violation of the Fair Employment**

**and Housing Act**

**(Against Bellami, BIG, and Does)**

55.    Plaintiff re-alleges and incorporates herein by this reference, as though set forth in full, each and every allegation contained in each and every one of the above paragraphs.

56.    The herein alleged facts establish the following: Plaintiff was an employee of Defendants.  Plaintiff was subjected to unlawful discrimination and/or retaliation in violation of the FEHA.  Defendants failed to take reasonable steps to prevent discrimination and/or retaliation.



- 15 -

COMPLAINT AND DEMAND FOR TRIAL BY JURY

57.    As a direct and proximate result of the Defendants' actions Plaintiff, has sustained direct, indirect, incidental, consequential, general, special, economic and non-economic compensatory damages in excess of $1,000,000.00, according to proof at trial.

58.    Furthermore, Plaintiff is entitled to punitive damages from each Defendant in a sum proven necessary to punish and make an example of said Defendant for Defendant's malicious and oppressive conduct and that conduct which reflects a conscious disregard of the Plaintiff's rights, in an amount which exceeds $1,000,000.00, according to proof at trial.

## SEVENTH CAUSE OF ACTION

### Retaliation In Violation of Labor Code Section 1102.5

### (Against All Defendants)

59.    Plaintiff re-alleges and incorporates herein by this reference, as though set forth in full, each and every allegation contained in each and every one of the above paragraphs.

60.    The herein allegation establish the following: Plaintiff engaged in protected activity within the meaning of California Labor Code §1102.5.  Among other things, Plaintiff reported to her employer, and/or a person who had authority over Plaintiff, and/or an employee who had authority to investigate, discover, and/or correct the unlawful practice, information that revealed a violation of state and/or federal law.   The above allegations establish that Plaintiff had reasonable cause to believe that the information disclosed and/or would result in a violation of and/or noncompliance with state and/or federal law(s). Defendants retaliated against Plaintiff, and among other things, discharged Plaintiff and terminated her employment. The Plaintiff's engagement in protected activity was a substantial motivating reason for the Defendants' retaliatory conduct, including without limitation the decision to discharge Plaintiff and terminate her employment.

61.    As a direct and proximate result of the Defendants' actions Plaintiff, has sustained direct, indirect, incidental, consequential, general, special, economic and non-economic compensatory damages in excess of $1,000,000.00, according to proof at trial.

/ / /



- 16 -
COMPLAINT AND DEMAND FOR TRIAL BY JURY

62.     Furthermore, Plaintiff is entitled to punitive damages from each Defendant in a sum proven necessary to punish and make an example of said Defendant for Defendant's malicious and oppressive conduct and that conduct which reflects a conscious disregard of the Plaintiff's rights, in an amount which exceeds $1,000,000.00, according to proof at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

**On All Causes of Action:**

1.  For all compensatory damages (including without limitation, direct, indirect, incidental, consequential, general, special, economic and non-economic damages) in an amount according to proof at trial;

2.  For exemplary and punitive damages in an amount appropriate to punish Defendant, and sufficient to deter Defendant from engaging in similar misconduct according to proof at trial.

3.  For all costs of suit incurred herein;

4.  For prejudgment and post judgment interest;

5.  For all relief the court deems just and proper.

**On the Second through Seventh Causes of Action:**

1.  For reasonable attorneys' fees.

2.  For an order enjoining Defendant from engaging in the herein described unlawful practices.

DATED: February 14, 2024          AKOPYAN LAW FIRM, A.P.C.

By: _____
    Michael Akopyan
    Attorney for Plaintiff
    KAREN SANCHEZ



- 17 -
COMPLAINT AND DEMAND FOR TRIAL BY JURY

1

## DEMAND FOR JURY TRIAL

2          Plaintiff hereby demands trial by jury.

3    DATED: February 14, 2024          AKOPYAN LAW FIRM, A.P.C.

4

5                                      By: _____
6                                          Michael Akopyan
                                           Attorney for Plaintiff
7                                          KAREN SANCHEZ

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



- 18 -
COMPLAINT AND DEMAND FOR TRIAL BY JURY

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Michael Akopyan, State Bar No. 239574<br>Akopyan Law Firm, A.P.C. 2600 West Olive Ave., Suite 500, Burbank, CA 91505<br><br>TELEPHONE NO.: (818) 509-9975    FAX NO.: (818) 804-3686<br>EMAIL ADDRESS: michael@akopyanlaw.com<br>ATTORNEY FOR *(Name)*: KAREN SANCHEZ | *FOR COURT USE ONLY*<br><br>**Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>2/14/2024 3:16 PM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By D. Williams, Deputy Clerk** |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES |
|---|
| STREET ADDRESS: 111 N. Hill Street |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: Los Angeles 90012 |
| BRANCH NAME: Central - Stanley Mosk |

| CASE NAME:<br>Karen Sanchez v. Beauty Industry Group, et. al. |
|---|

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER:<br>24STCV03811 |
|---|---|---|
| [x] **Unlimited**<br>(Amount<br>demanded<br>exceeds $35,000) | [ ] **Limited**<br>(Amount<br>demanded is<br>$35,000 or less) | [ ] Counter  [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [x] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is  [x] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
   factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties          d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel     e. [ ] Coordination with related actions pending in one or more
          issues that will be time-consuming to resolve                   courts in other counties, states, or countries, or in a federal
   c. [ ] Substantial amount of documentary evidence                      court
                                                                   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [x] monetary  b. [x] nonmetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify)*: 7
5. This case [ ] is  [x] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: February 14, 2024
Michael Akopyan
_____                    ▶    _____
(TYPE OR PRINT NAME)                                       (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed
  under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to
  the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. January 1, 2024] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courts.ca.gov* |
|---|---|---|

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**  CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice– Physicians & Surgeons
   Other Professional Health Care Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip and fall)
   Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
   Intentional Infliction of Emotional Distress
   Negligent Infliction of Emotional Distress
   Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
   Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/ Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court Case Matter
   Writ–Other Limited Court Case Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of County)
   Confession of Judgment *(non-domestic relations)*
   Sister State Judgment
   Administrative Agency Award *(not unpaid taxes)*
   Petition/Certification of Entry of Judgment on Unpaid Taxes
   Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-harassment)*
   Mechanics Lien
   Other Commercial Complaint Case *(non-tort/non-complex)*
   Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late Claim
   Other Civil Petition

CM-010 [Rev. January 1, 2024]                    **CIVIL CASE COVER SHEET**                    Page 2 of 2

**EXHIBIT A - Page 22 of 32**

| SHORT TITLE | CASE NUMBER |
|---|---|
| Karen Sanchez v. Beauty Industry Group, et. al. | 24STCV03811 |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> **This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | | |
|---|---|---|
| 1. | Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7. Location where petitioner resides. |
| 2. | Permissive filing in Central District. | 8. Location wherein defendant/respondent functions wholly. |
| 3. | Location where cause of action arose. | 9. Location where one or more of the parties reside. |
| 4. | Location where bodily injury, death or damage occurred. | 10. Location of Labor Commissioner Office. |
| 5. | Location where performance required, or defendant resides. | 11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6. | Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

LASC CIV 109 Rev. 01/23
For Mandatory Use

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

LASC Local Rule 2.3

**EXHIBIT A - Page 23 of 32**

| SHORT TITLE | CASE NUMBER |
|---|---|
| Karen Sanchez v. Beauty Industry Group, et. al. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☑ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06)<br>(not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

| | SHORT TITLE Karen Sanchez v. Beauty Industry Group, et. al. | | CASE NUMBER |
|---|---|---|---|

| | **A** Civil Case Cover Sheet Case Type | **B** Type of Action (check only one) | **C** Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Contract** (Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation          Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

LASC CIV 109 Rev. 01/23
For Mandatory Use

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

LASC Local Rule 2.3

EXHIBIT A - Page 25 of 32

| SHORT TITLE | CASE NUMBER |
|---|---|
| Karen Sanchez v. Beauty Industry Group, et. al. | |

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

LASC CIV 109 Rev. 01/23          **CIVIL CASE COVER SHEET ADDENDUM**          LASC Local Rule 2.3
For Mandatory Use                    **AND STATEMENT OF LOCATION**

| SHORT TITLE | CASE NUMBER |
|---|---|
| Karen Sanchez v. Beauty Industry Group, et. al. | |

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON:<br>☐ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | | | ADDRESS:<br>21123 Nordhoff Street<br>Chatsworth, CA 91311 |
|---|---|---|---|
| CITY:<br>Chatsworth | STATE:<br>CA | ZIP CODE:<br>91311 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the  Central  District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: 02/14/2024

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 01/23
For Mandatory Use

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

LASC Local Rule 2.3

EXHIBIT A - Page 27 of 32

 **Superior Court of California, County of Los Angeles**

---

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

---

### What is ADR?
ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR
- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR
- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or decision by a judge or jury.

### Main Types of ADR
1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

---

LASC CIV 271 Rev. 03/23
For Mandatory Use

Page 1 of 2

**How to Arrange Mediation in Los Angeles County**

Mediation for **civil cases** is voluntary and parties may select any mediator they wish.  Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

   - **ADR Services, Inc.** Assistant Case Manager Janet Solis, janet@adrservices.com (213) 683-1600
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

   **These organizations cannot accept every case and they may decline cases at their discretion.** They may offer online mediation by video conference for cases they accept.  Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

   **NOTE:  The Civil Mediation Vendor Resource List program does not accept family law, probate, or small claims cases.**

b. **Los Angeles County Dispute Resolution Programs.**  Los Angeles County-funded agencies provide mediation services on the day of hearings in small claims, unlawful detainer (eviction), civil harassment, and limited civil (collections and non-collection) cases. https://dcba.lacounty.gov/countywidedrp/

   **Online Dispute Resolution (ODR).**  Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.  https://my.lacourt.org/odr/

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration:**  Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome.  In "binding" arbitration, the arbitrator's decision is final; there is no right to trial.  In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.  For more information about arbitration, visit https://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):**  MSCs are ordered by the Court and are often held close to the trial date or on the day of trial.  The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.  For information about the Court's MSC programs for civil cases, visit https://www.lacourt.org/division/civil/CI0047.aspx

Los Angeles Superior Court ADR website:  https://www.lacourt.org/division/civil/CI0109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**02/14/2024**<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ D. Williams _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br>**UNLIMITED CIVIL CASE** | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>24STCV03811 |

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✓ | Daniel S. Murphy | 32 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record     David W. Slayton, Executive Officer / Clerk of Court

on _02/15/2024_____                                      By _D. Williams_____, Deputy Clerk
       (Date)

LACIV 190 (Rev 6/18)          **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS: Stanley Mosk Courthouse 111 North Hill Street, Los Angeles, CA 90012 | FILED Superior Court of California County of Los Angeles 02/20/2024 David W. Slayton, Executive Officer / Clerk of Court By    M. Navarro    Deputy |
| PLAINTIFF: Karen Sanchez | |
| DEFENDANT: Beauty Industry Group, OPCO, LLC, et al. | |
| NOTICE OF CASE MANAGEMENT CONFERENCE | CASE NUMBER: 24STCV03811 |

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

> Date: 06/10/2024    Time: 8:30 AM    Dept.: 32

NOTICE TO DEFENDANT:    THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: 02/20/2024 _____

Judicial Officer
Daniel S. Murphy / Judge

---

**CERTIFICATE OF SERVICE**

I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☑ by depositing in the United States mail at the courthouse in Los Angeles _____, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

Michael Akopyan
2600 West Olive Ave
Ste 500
Burbank, CA 91505

David W. Slayton, Executive Officer / Clerk of Court

Dated: 02/20/2024 _____

By M. Navarro _____
Deputy Clerk

LASC LACIV 132 Rev. 01/23
For Optional Use

**NOTICE OF CASE MANAGEMENT CONFERENCE**
EXHIBIT A - Page 32 of 32

Cal. Rules of Court, rules 3.720-3.730
LASC Local Rules, Chapter 7KUHH

# EXHIBIT B

SEYFARTH SHAW LLP
Dana L. Peterson (SBN 178499)
dpeterson@seyfarth.com
David J. Kim (SBN 349802)
dakim@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

Attorneys for Defendants
BEAUTY INDUSTRY GROUP, OPCO, LLC and
BELLAMI HAIR, LLC

**SUPERIOR COURT OF STATE OF CALIFORNIA**

**FOR COUNTY OF LOS ANGELES – CENTRAL DISTRICT**

| | |
|---|---|
| KAREN SANCHEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>BEAUTY INDUSTRY GROUP, OPCO, LLC;<br>BELLAMI HAIR, LLC; RANDILYN DELA<br>CRUZ; and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.: 24STCV03811<br><br>Hon. Daniel S. Murphy, Dept. 32<br><br>**DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT**<br><br>Complaint Filed: February 14, 2024<br>Trial Date: None Set |

Defendants Beauty Industry Group, Opco, LLC and Bellami Hair, LLC, (collectively, "Defendants"), hereby answer the Unverified Complaint for Damages filed by Plaintiff Karen Sanchez ("Plaintiff") as follows:

**GENERAL DENIAL**

Pursuant to California Code of Civil Procedure section 431.30(d), Defendants deny generally each allegation and each purported cause of action in the Complaint, and without limiting the generality of the foregoing, deny that Plaintiff has been damaged in any amount, or at all, by reason of any acts or omissions of Defendants.

**DEFENSES**

In further answer to the Complaint, and as separate and distinct affirmative and other defenses, Defendants allege as follows, without assuming the burden of proof on any defense on which it would not otherwise have the burden of proof by operation of law:

**FIRST DEFENSE**

**(Failure to State a Cause of Action - All Causes Of Action)**

1.    Plaintiff's Complaint fails to state facts sufficient to constitute a cause of action against Defendants.

**SECOND DEFENSE**

**(Failure to Exhaust Administrative Remedies - All Causes Of Action)**

2.    Plaintiff's claims, in whole or in part, are barred because Plaintiff has failed to exhaust her administrative remedies or to comply with the statutory prerequisites for bringing suit.

**THIRD DEFENSE**

**(Statute of Limitations – All Causes Of Action)**

3.    Plaintiff's claims, in whole or in part, are barred by the applicable statute of limitations, including, but not limited to, Government Code sections 12960 and 12965, as well as those contained in California Code of Civil Procedure §§ 335.1, 337, 338, 339, 340, and 343 and generally applicable under California Code of Civil Procedure § 312.

1

## FOURTH DEFENSE

### (Laches – All Causes Of Action)

4.    Plaintiff's claims are barred, in whole or in part, by the doctrine of laches because Plaintiff delayed unreasonably in bringing her claims.

## FIFTH DEFENSE

### (Waiver – All Causes Of Action)

5.    Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

## SIXTH DEFENSE

### (Estoppel – All Causes Of Action)

6.    Because of Plaintiff's own acts or omissions, Plaintiff is barred by the equitable doctrine of estoppel from maintaining this action or pursuing any cause of action alleged in the Complaint.

## SEVENTH DEFENSE

### (Unclean Hands – All Causes Of Action)

7.    Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

## EIGHTH DEFENSE

### (Ratification – All Causes Of Action)

8.    Plaintiff's Complaint and each cause of action alleged therein, is barred on the ground that Plaintiff ratified Defendants' alleged actions.

## NINTH DEFENSE

### (Failure To Mitigate Damages – All Causes Of Action)

9.    Defendants allege, based on information and belief, that Plaintiff had the ability and opportunity to mitigate the purported damages alleged in the Complaint and failed to act reasonably to mitigate such damages.  To the extent that Plaintiff suffered any damages as a result of the facts alleged in her Complaint, which Defendants deny, Plaintiff is not entitled to recover the amount of damages alleged or any damages due to her failure to make reasonable efforts to mitigate or minimize the damages incurred.  By reason of the foregoing, Plaintiff is barred in whole or in part from recovery of damages from Defendants.

**TENTH DEFENSE**

**(Failure To Exercise Reasonable Preventive Corrective Opportunities - All Causes Of Action)**

10.     To the extent any of Defendants' employees or agents engaged in unlawful discriminatory or retaliatory behavior, or any other unlawful conduct toward Plaintiff, Defendants are not liable for any such discrimination, retaliation, or other conduct, or Plaintiff's damages must be reduced, because Defendants exercised reasonable care to prevent and correct promptly any discriminatory, retaliatory, or other unlawful behavior, and Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided or to otherwise avoid harm.

**ELEVENTH DEFENSE**

**(After-Acquired Evidence - All Causes Of Action)**

11.     Plaintiff's claims are barred, or her damages, if any, are limited, to the extent she engaged in any misconduct of which Defendants were unaware that provides independent legal cause for the changes in her employment.

**TWELFTH DEFENSE**

**(Prompt Remedial Action - All Causes Of Action)**

12.     Defendants took prompt and appropriate corrective action in response to Plaintiff's complaints or stated concerns regarding the workplace, if in fact Plaintiff made any such complaints, thereby satisfying all legal duties and obligations Defendant had to Plaintiff, if any at all.

**THIRTEENTH DEFENSE**

**(Legitimate Non-Discriminatory, Non-Retaliatory Actions - All Causes Of Action)**

13.     Plaintiff's claims are barred, in whole or in part, because Defendants had a legitimate business reason that was non-discriminatory and non-retaliatory for all actions taken with respect to Plaintiff's employment.

**FOURTEENTH DEFENSE**

**(Mixed Motive - All Causes Of Action)**

14.     Even if Plaintiff should prove that her alleged disability or any other protected status was a substantial factor motivating the challenged employment actions, which Defendants deny; the same actions would have been taken based on legitimate, non-discriminatory, non-retaliatory considerations.

3

**FIFTEENTH DEFENSE**

**(Award Of Punitive Damages Is Unconstitutional - All Causes Of Action)**

15.    To the extent that Plaintiff seeks punitive or exemplary damages in her Complaint, she violates the rights of Defendants to protection from "excessive fines" as provided in the Eighth Amendment to the United States Constitution and in Article I, Section 17 of the Constitution of the State of California and the rights of Defendants to procedural and substantive due process under the Fifth and Fourteenth Amendments to the United States Constitution and under the Constitution of the State of California.

**SIXTEENTH DEFENSE**

**(Lack Of Causation For Emotional Distress Damages - All Causes Of Action)**

16.    Plaintiff's claims, in whole or in part, are barred to the extent that Plaintiff has not alleged any tangible or medical evidence of emotional distress as a result of any conduct alleged in the Complaint.  Alternatively, to the extent that any alleged emotional distress is alleged by Plaintiff, it was caused by a collateral source other than Defendants.

**SEVENTEENTH DEFENSE**

**(Managerial Discretion - All Causes Of Action)**

17.    Plaintiff's claims, in whole or in part, are barred to the extent that any and all decisions made and actions taken by and/or on behalf of Defendants, were in the exercise of proper managerial discretion and in good faith.

**EIGHTEENTH DEFENSE**

**(Scope Of Authority - All Causes Of Action)**

18.    The Complaint, and each and every purported cause of action therein, is barred to the extent that the actions of Defendants' agents, employees, and representatives, if they occurred, were not actions taken within the course and scope of their employment.

**NINETEENTH DEFENSE**

**(Reasonable Accommodation - All Causes Of Action)**

19.    Plaintiff's claims are barred because Defendants were not legally required to provide reasonable accommodations to Plaintiff, and to the extent that it was so legally required, Defendants

4

fulfilled its obligation or was excused because the accommodation would have constituted an undue
hardship.  Neither compensatory nor punitive damages may be awarded against Defendants due to its
good faith efforts to make reasonable accommodations for Plaintiff.

## TWENTIETH DEFENSE

### (Failure To Engage In The Interactive Process - All Causes Of Action)

20.     Plaintiff's claims are barred to the extent Plaintiff failed and/or refused to engage in the
interactive process.

## TWENTY-FIRST DEFENSE

### (Failure To Inform Employer Of Alleged Violations - All Causes Of Action)

21.     Plaintiff's Complaint, and each cause of action contained therein, is barred because
Plaintiff did not inform Defendants of any alleged unlawful conduct or purported complaints prior to
filing a lawsuit.  Plaintiff, therefore, did not provide Defendants with an opportunity to correct any
alleged violations and provide the appropriate remedy, if any, to Plaintiff prior to the time she filed her
claims.

## TWENTY-SECOND DEFENSE

### (Setoff And Recoupment - All Causes Of Action)

22.     To the extent a court holds that Plaintiff is entitled to damages or penalties, which is
specifically denied, Defendants are entitled under the equitable doctrine of setoff and recoupment to
offset all overpayments and/or all obligations that Plaintiff owed to Defendants against any judgment
that may be entered against Defendants.

## TWENTY-THIRD DEFENSE

### (Offset - All Causes Of Action)

23.     Any recovery on Plaintiff's Complaint, or any purported cause of action alleged therein,
is barred in whole or in part because Defendants are entitled to an offset for any monies Plaintiff
received from any source after Plaintiff ceased to be employed under the doctrine prohibiting double
recovery set forth by *Witt v. Jackson*, 57 Cal. 2d 57 (1961), and its progeny.

## TWENTY-FOURTH DEFENSE

### (Adequate Legal Remedy - All Causes Of Action)

24.     Plaintiff's request for injunctive relief is improper because Plaintiff has an adequate remedy at law.

## TWENTY-FIFTH DEFENSE

### (*Res Judicata* & Collateral Estoppel - All Causes Of Action)

25.     Plaintiff's claims are barred by the doctrine of *res judicata* and/or collateral estoppel.

## TWENTY-SIXTH DEFENSE

### (Failure To State A Claim For Relief Sought - All Causes Of Action)

26.     Plaintiff's Complaint fails to properly state a claim for injunctive, equitable, declaratory, or other relief sought.

## TWENTY-SEVENTH DEFENSE

### (Avoidable Consequences - All Causes Of Action)

27.     Plaintiff's Complaint, and each purported cause of action alleged therein, is barred by the avoidable consequences doctrine.

## TWENTY-EIGHTH DEFENSE

### (At-Will Employment - All Causes Of Action)

28.     Pursuant to California Labor Code section 2922, Plaintiff's employment was at-will, terminable at-will by either party with or without cause or notice, and therefore, her claims are barred by section 2922.

## TWENTY-NINTH DEFENSE

### (Contributory Fault - All Causes of Action)

29.     Any recovery on Plaintiff's Complaint, or any purported cause of action alleged therein, is barred in whole or in part by Plaintiff's own contributory and/or comparative fault.

## THIRTIETH DEFENSE

### (Mixed Motive - All Causes of Action)

30.     Defendant alleges that Plaintiff's remedies are limited and/or liability is precluded because Defendant would have taken the same action in absence of any alleged impermissible

6

substantial motivating factor(s). If it is found that Defendant's actions were motivated by both legitimate and illegitimate reasons, the legitimate reasons alone would have induced Defendant to make the same decision.

### THIRTY-FIRST DEFENSE

#### (Speculative Damages - All Causes of Action)

31.     Plaintiff's losses, if any, are speculative and/or uncertain, and therefore, not compensable.

### THIRTY-SECOND DEFENSE

#### (Improper Defendants -  All Causes of Action )

33.     To the extent that one or more Defendants did not employ Plaintiff, they are improperly named Defendants.

### THIRTY-THIRD DEFENSE

#### (Preemption by Workers' Compensation – All Causes of Action)

34.      Plaintiff seeks recovery for alleged physical and/or emotional injury based on conduct by Defendant that neither contravenes fundamental California public policy nor exceeds the risks inherent in the employment relationship, and as such, recovery is barred by the Workers' Compensation Act, and California Labor Code Sections 3200, *et., seq.*, 3601 and 3602, which provide the exclusive remedy for these alleged injuries.

### RESERVATION OF RIGHTS

Defendants do not presently know all of the facts and circumstances respecting Plaintiff's claims. Defendants have not knowingly or intentionally waived any applicable defenses and reserve the right to assert and rely on such other applicable defenses as may later become available or apparent.  Defendants further reserve the right to amend their answer or defenses accordingly and/or to delete defenses that they determine are not applicable during the course of discovery.

### PRAYER

WHEREFORE, Defendants pray for judgment as follows:

1.     That Plaintiff take nothing by her Complaint;

2.     That judgment be entered in favor of Defendants and against Plaintiff on all causes of action;

309640480v.3

1    3.    That Defendants be awarded reasonable attorneys' fees according to proof;

2    4.    That Defendants be awarded its costs of suit incurred herein; and

3    5.    That Defendants be awarded such other and further relief as the Court may deem

4    appropriate.

5    DATED: March 20, 2024                    SEYFARTH SHAW LLP

6

7                                            By: _David J. Kim_

8                                            Dana L. Peterson
                                             David J. Kim
9                                            Attorneys for Defendants
                                             BEAUTY INDUSTRY GROUP, OPCO,
10                                           LLC; BELLAMI HAIR, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

1

## **PROOF OF SERVICE**

2   STATE OF CALIFORNIA                    )
                                           )   ss
3   COUNTY OF LOS ANGELES                  )

4        I am a resident of the State of California, over the age of eighteen years, and not a party to the
    within action.  My business address is 2029 Century Park East, Suite 3500, Los Angeles, California
5   90067-3021.  On March 20, 2024, I served the within document(s):

6                **DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT**

7   ☒   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid,
         in the United States mail at Los Angeles, California, addressed as set forth below.
8

9   ☐   by personally delivering the document(s) listed above to the person(s) at the address(es) set forth
         below.

10  ☐   by placing the document(s) listed above, together with an unsigned copy of this declaration, in a
         sealed envelope or package provided by an overnight delivery carrier with postage paid on
11       account and deposited for collection with the overnight carrier at Los Angeles, California,
         addressed as set forth below.
12

13  ☐   by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth
         below.

14       Michael Akopyan                     Phone:   818.509.9975
         Akopyan Law Firm APC                Fax:     818.804.3686
15       2600 W. Olive Avenue, Suite 587     Emails:  michael@akopyanlaw.com
         Burbank, CA 91505                            ani@akopyanlan.com
16

17                                           Attorneys for Plaintiff KAREN SANCHEZ

18       I am readily familiar with the firm's practice of collection and processing correspondence for
    mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with
19  postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party
    served, service is presumed invalid if postal cancellation date or postage meter date is more than one day
20  after date of deposit for mailing in affidavit.

21       I declare under penalty of perjury under the laws of the State of California that the above is true
    and correct.
22

23       Executed on March 20, 2024, at Los Angeles, California.

24                                    _____
                                                Valerie Norris
25

26

27

28

                                        9
_____
                DEFENDANTS' ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT FOR DAMAGES
309640480v.3
                            **EXHIBIT B - Page 11 of 11**

# EXHIBIT C

EXHIBIT C - Page 1 of 9

POS-010

February 22, 2024

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
AKOPYAN LAW FIRM, A.P.C.
2600 W. Olive Ave. Ste. 500   Burbank, CA 91505
TELEPHONE NO.: (818) 509-9975 | FAX NO. (818) 804-3686 | E-MAIL ADDRESS *(Optional):* info@akopyanlaw.com
ATTORNEY FOR *(Name):* Defendant:

Electronically FILED by
Superior Court of California,
County of Los Angeles
3/07/2024 4:47 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Simmons, Deputy Clerk

STANLEY MOSK COURTHOUSE
STREET ADDRESS: 111 NORTH HILL ST.
MAILING ADDRESS:
CITY AND ZIP CODE: LOS ANGELES, CA 90012
BRANCH NAME: Los Angeles

PLAINTIFF: KAREN SANCHEZ
DEFENDANT: BEAUTY INDUSTRY GROUP, OPCO, LLC; ET AL

CASE NUMBER: 24STCV03811

**PROOF OF SERVICE OF SUMMONS**

Ref. No. or File No.: Karen Sanchez

*(Separate proof of service is required for each party served.)*

**BY FAX**

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ Cross-complaint
   f. ☑ other *(specify documents):* Civil Case Cover Sheet AddendumNOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE
3. a. Party served *(specify name of party as shown on documents served):*
   **BEAUTY INDUSTRY GROUP, OPCO, LLC**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   **Brian Garcia - Authorized to accept service**
4. Address where the party was served: **21123 Nordhoff St
   Chatsworth, CA 91311-5816**
5. I served the party *(check proper box)*
   a. ☑ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* **2/20/2024**   (2) at *(time):* **2:37 PM**

   b. ☐ **by substituted service.** On *(date):* at *(time):* I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*

   (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.
   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):* from *(city):* **or** ☐ a declaration of mailing is attached.
   (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Form Approved for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10
POS010-1/CW506589

EXHIBIT C - Page 2 of 9

| | |
|---|---|
| PETITIONER: KAREN SANCHEZ | CASE NUMBER: |
| RESPONDENT: BEAUTY INDUSTRY GROUP, OPCO, LLC; ET AL | 24STCV03811 |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                          (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

    a. ☐ as an individual defendant.
    b. ☐ as the person sued under the fictitious name of *(specify):*
    c. ☐ as occupant.
    d. ☑ On behalf of *(specify):* **BEAUTY INDUSTRY GROUP, OPCO, LLC**
        under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☑ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**
    a. Name: **Tamar Ravid - Cal West Attorney Services, Inc**
    b. Address: **730 Salem Street  Glendale, CA 91203**
    c. Telephone number: **(213) 353-9100**
    d. **The fee** for service was: **$ 91.20**
    e. I am:

        (1) ☐ not a registered California process server.
        (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
        (3) ☑ registered California process server:
            (i) ☐ owner   ☐ employee   ☐ independent contractor.
            (ii) Registration No.: **5967**
            (iii) County: **Los Angeles**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
    or
9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

    Date: **2/22/2024**
    **Cal West Attorney Services, Inc**
    **730 Salem Street**
    **Glendale, CA 91203**
    **(213) 353-9100**
    **www.calwest.info**

| | |
|---|---|
| **Tamar Ravid** | ▶ *Tamar Ravid* |
| (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL) | |

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):

AKOPYAN LAW FIRM, A.P.C.
2600 W. Olive Ave. Ste. 500  Burbank, CA 91505

TELEPHONE NO.: (818) 509-9975 | FAX NO. (818) 804-3686 | E-MAIL ADDRESS (Optional): info@akopyanlaw.com
ATTORNEY FOR (Name): Defendant:

Electronically FILED by
Superior Court of California,
County of Los Angeles
3/11/2024 12:00 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Simmons, Deputy Clerk

**STANLEY MOSK COURTHOUSE**

STREET ADDRESS: 111 NORTH HILL ST.

MAILING ADDRESS:

CITY AND ZIP CODE: LOS ANGELES, CA 90012

BRANCH NAME: Los Angeles

PLAINTIFF: KAREN SANCHEZ

DEFENDANT: BEAUTY INDUSTRY GROUP, OPCO, LLC; ET AL

CASE NUMBER: 24STCV03811

### PROOF OF SERVICE OF SUMMONS

Ref. No. or File No.:
Karen Sanchez

*(Separate proof of service is required for each party served.)*

**BY FAX**

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ Cross-complaint
   f. ☑ other *(specify documents):* **Civil Case Cover Sheet AddendumNOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
3. a. Party served *(specify name of party as shown on documents served):*

   **BELLAMI HAIR, LLC**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   **John Montijo - Agent for service**

4. Address where the party was served: **330 N Brand Blvd**
   **Glendale, CA 91203-2308**

5. I served the party *(check proper box)*
   a. ☑ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* **2/20/2024**   (2) at *(time):* **12:26 PM**

   b. ☐ **by substituted service.** On *(date):* at *(time):* I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):*  from *(city):*   **or** ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

EXHIBIT C - Page 4 of 9

| PETITIONER: KAREN SANCHEZ | CASE NUMBER: |
|---|---|
| RESPONDENT: BEAUTY INDUSTRY GROUP, OPCO, LLC; ET AL | 24STCV03811 |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                     (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☐ as an individual defendant.

  b. ☐ as the person sued under the fictitious name of *(specify):*

  c. ☐ as occupant.

  d. ☑ On behalf of *(specify):* **BELLAMI HAIR, LLC**
      under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☑ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**

  a. Name: **Ramiro U. Saucedo Jr. - Cal West Attorney Services, Inc**

  b. Address: **730 Salem Street  Glendale, CA 91203**

  c. Telephone number: **(213) 353-9100**

  d. **The fee** for service was: **$ 91.20**

  e. I am:

    (1) ☐ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☑ registered California process server:

      (i) ☐ owner  ☐ employee  ☑ independent contractor.

      (ii) Registration No.: **2021278531**

      (iii) County: **Los Angeles**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

    Date: **2/21/2024**

    **Cal West Attorney Services, Inc**
    **730 Salem Street**
    **Glendale, CA 91203**
    **(213) 353-9100**
    **www.calwest.info**

| **Ramiro U. Saucedo Jr.** | ▶ *Ramiro Saucedo* |
|---|---|
| (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL) | |

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
AKOPYAN LAW FIRM, A.P.C.
2600 W. Olive Ave. Ste. 500   Burbank, CA 91505

TELEPHONE NO.: (818) 509-9975 | FAX NO. (818) 804-3686 | E-MAIL ADDRESS *(Optional):* info@akopyanlaw.com

ATTORNEY FOR *(Name):* Defendant:

*FOR COURT USE ONLY*

Electronically FILED by
Superior Court of California,
County of Los Angeles
3/07/2024 4:47 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Simmons, Deputy Clerk

STANLEY MOSK COURTHOUSE

STREET ADDRESS: 111 NORTH HILL ST.

MAILING ADDRESS:

CITY AND ZIP CODE: LOS ANGELES, CA 90012

BRANCH NAME: Los Angeles

PLAINTIFF: KAREN SANCHEZ

DEFENDANT: BEAUTY INDUSTRY GROUP, OPCO, LLC; ET AL

CASE NUMBER: 24STCV03811

**PROOF OF SERVICE OF SUMMONS**

Ref. No. or File No.:
Karen Sanchez

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   - a. ☑ Summons
   - b. ☑ Complaint
   - c. ☑ Alternative Dispute Resolution (ADR) package
   - d. ☑ Civil Case Cover Sheet *(served in complex cases only)*
   - e. ☐ Cross-complaint
   - f. ☑ other *(specify documents):* **Civil Case Cover Sheet AddendumNOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

BY FAX

3. a. Party served *(specify name of party as shown on documents served):*
   **RANDILYN DELA CRUZ**

   b. ☐ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:   **21123 Nordhoff St**
   **Chatsworth, CA 91311-5816**

5. I served the party *(check proper box)*
   - a. ☐ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):*   (2) at *(time):*
   - b. ☑ **by substituted service.** On *(date):* **2/20/2024** at *(time):* **2:37 PM** I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*
     **Brian Garcia - Employee/Accepting service**

     (1) ☑ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.

     (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

     (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him of her of the general nature of the papers.

     (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):* from *(city):* **or** ☑ a declaration of mailing is attached.

     (5) ☑ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Approved for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

POS010-1/CW506588

EXHIBIT C - Page 6 of 9

| PETITIONER: KAREN SANCHEZ | CASE NUMBER: |
| RESPONDENT: BEAUTY INDUSTRY GROUP, OPCO, LLC; ET AL | 24STCV03811 |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1) on *(date):*                   (2) from *(city):*

   (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)

   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☑ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☐ On behalf of *(specify):*
     under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**
  a. Name: **Tamar Ravid - Cal West Attorney Services, Inc**
  b. Address: **730 Salem Street  Glendale, CA 91203**
  c. Telephone number: **(213) 353-9100**
  d. **The fee** for service was: **$ 106.20**
  e. I am:

   (1) ☐ not a registered California process server.
   (2) ☑ exempt from registration under Business and Professions Code section 22350(b).
   (3) ☑ registered California process server:
     (i) ☐ owner ☐ employee ☐ independent contractor.
     (ii) Registration No.: **5967**
     (iii) County: **Los Angeles**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **2/22/2024**

**Cal West Attorney Services, Inc**
**730 Salem Street**
**Glendale, CA 91203**
**(213) 353-9100**
**www.calwest.info**

_____
      **Tamar Ravid**
  (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ *Tamar Ravid*

EXHIBIT C - Page 7 of 9

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar Number, and Address)*:   *FOR COURT USE ONLY*

AKOPYAN LAW FIRM, A.P.C.
2600 W. Olive Ave. Ste. 500   Burbank, CA 91505

TELEPHONE NO.: (818) 509-9975 | FAX NO. (818) 804-3686 | E-MAIL ADDRESS *(Optional)*: info@akopyanlaw.com
ATTORNEY FOR *(Name)*: Defendant:

**STANLEY MOSK COURTHOUSE**

STREET ADDRESS: 111 NORTH HILL ST.

MAILING ADDRESS:

CITY AND ZIP CODE: LOS ANGELES, CA 90012

BRANCH NAME: Los Angeles

| | |
|---|---|
| PLAINTIFF/PETITIONER:  KAREN SANCHEZ | CASE NUMBER: |
| DEFENDANT/RESPONDENT:  BEAUTY INDUSTRY GROUP, OPCO, LLC; ET AL | 24STCV03811 |
| **DECLARATION OF DILIGENCE** | Ref. No. or File No.: Karen Sanchez |

I, Tamar Ravid , declare: I am a Registered Process Server and was retained to serve process in the above-referenced matter on the following person or entity: RANDILYN DELA CRUZ as follows:
Documents:

   **Summons; Complaint; Alternative Dispute (ADR) package; Civil Case Cover Sheet (served in complex cases only); Civil Case Cover Sheet AddendumNOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

I attempted personal service on the following dates and times with the following results:

| Date | Time | Location | Results |
|---|---|---|---|
| 2/16/2024 | 8:01 AM | Business | No answer at the door, no activity. - Tamar Ravid<br>21123 Nordhoff St,  Chatsworth, CA 913115816 |
| 2/19/2024 | 3:17 PM | Business | Business closed. - Tamar Ravid<br>21123 Nordhoff St,  Chatsworth, CA 913115816 |
| 2/20/2024 | 2:37 PM | Business | Substituted service on: RANDILYN DELA CRUZ; 21123 Nordhoff St, Chatsworth, CA 91311-5816; by serving: Brian Garcia - Employee/Accepting service. |

Fee for Service: **$ 106.20**

★   County:  **Los Angeles**
     Registration No.:  **5967**
     **Cal West Attorney Services, Inc**
     730 Salem Street
     Glendale, CA 91203
     (213) 353-9100

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on February 22, 2024.

Signature: *Tamar Ravid*
                   **Tamar Ravid**

**AFFIDAVIT OF REASONABLE DILIGENCE**

Order#: CW506588

EXHIBIT C - Page 8 of 9

Attorney or Party without Attorney:

AKOPYAN LAW FIRM, A.P.C.
2600 W. Olive Ave. Ste. 500
Burbank, CA 91505
*TELEPHONE No.:* (818) 509-9975

*E-MAIL ADDRESS (Optional):* info@akopyanlaw.com
*FAX No. (Optional):* (818) 804-3686

*Attorney for:* Defendant

*Ref No. or File No.:*
Karen Sanchez

*Insert name of Court, and Judicial District and Branch Court:*
STANLEY MOSK COURTHOUSE - Los Angeles

*Plaintiff:* KAREN SANCHEZ

*Defendant:* BEAUTY INDUSTRY GROUP, OPCO, LLC; ET AL

| PROOF OF SERVICE BY MAIL | HEARING DATE: | TIME: | DEPT.: | CASE NUMBER: |
|---|---|---|---|---|
| | | | | 24STCV03811 |

1. I am over the age of 18 and not a party to this action.  I am employed in the county where the mailing occured.

2. I served copies of the Summons; Complaint; Alternative Dispute (ADR) package; Civil Case Cover Sheet (served in complex cases only); Civil Case Cover Sheet AddendumNOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE

3. By placing a true copy thereof enclosed in a sealed envelope, with First Class postage thereon fully prepaid, in the United States Mail at Glendale, California, addressed as  follows:

   a. Date of Mailing:           2/22/2024
   b. Place of Mailing:          Glendale, CA
   c. Addressed as follows:     RANDILYN DELA CRUZ
                                   21123 Nordhoff St
                                   Chatsworth, CA 91311-5816

I am readily familiar with the firm's practice for collection and processing of documents for mailing.  Under that practice, it would be  deposited within the United States Postal Service, on that same day, with postage thereon fully prepaid at Glendale, California in the ordinary course of  business.

Fee for Service: **$ 106.20**

★  **Cal West Attorney Services, Inc**
   730 Salem Street
   Glendale, CA 91203
   (213) 353-9100
   Ref: Karen Sanchez

I declare under penalty of perjury under the laws of The State of California that the foregoing information contained in the return of service and statement of service fees is true and correct and that this declaration was executed on **2/22/2024**.

Signature: _____

**Vanessa Gonzalez**

## PROOF OF SERVICE BY MAIL

Order#: CW506588/mailproof

EXHIBIT C - Page 9 of 9

# EXHIBIT D



**Search:**     Public Records : SmartLinx® Comprehensive Person Report
**Terms:**      first-name(Karen) last-name(Sanchez) state(ALL) radius(30) dob(1/XX/1985)

| No. | Full Name | Address | Phone | SSN |
|-----|-----------|---------|-------|-----|
| 1 | SANCHEZ, KAREN ENRIQUETA SANCHEZ, KAREN E SANCHEZ, KAREN SANCHEZ, KAEN  (Gender: Female)(DOB: 01/1985)(Age: 39) (Gender: Female) | 2362 1/2 N ALVARADO ST LOS ANGELES, CA 90039-3730 LOS ANGELES COUNTY (10/2014-Current) | | 607-86-XXXX (CA:1995-1996)  LexID(sm): 036968552989 |
| | | 2362 N ALVARADO ST LOS ANGELES, CA 90039-3730 LOS ANGELES COUNTY (10/2014-Current) | | |
| | | 23621/2 N ALVARADO ST LOS ANGELES, CA 90039 LOS ANGELES COUNTY (06/2019-Current) | | |
| | | 3959 ARLINGTON AVE LOS ANGELES, CA 90008-2709 LOS ANGELES COUNTY (08/2003-03/2022) | | |
| | | 1000 ECHO PARK AVE APT 205 LOS ANGELES, CA 90026-4258 LOS ANGELES COUNTY (01/2014-05/2015) | | |
| | | 2609 BRIGHTON AVE UNIT A LOS ANGELES, CA 90018-2716 LOS ANGELES COUNTY (03/2010-11/2013) | | |

Karen_Sanchez

| No. | Full Name | Address | Phone | SSN |
|-----|-----------|---------|-------|-----|

4848 LEXINGTON AVE
APT 102
LOS ANGELES, CA
90029-1613
LOS ANGELES COUNTY
(09/2008-05/2023)

335 N MAPLE DR STE 135
BEVERLY HILLS, CA
90210-3857
LOS ANGELES COUNTY
(12/2008-12/2008)

171 TUSCULUM RD
ANTIOCH, TN 37013-4049
DAVIDSON COUNTY
(04/2007-03/2015)

1152 W 57TH ST
LOS ANGELES, CA
90037-3908
LOS ANGELES COUNTY
(01/2005-01/2006)

801 S FIGUEROA ST APT
LOS ANGELES, CA
90017-5504
LOS ANGELES COUNTY
(05/2009-05/2009)

9000 W SUNSET BLVD
PH STE
WEST HOLLYWOOD, CA
90069-5801
LOS ANGELES COUNTY
(06/2008-
06/2008) Newspaper
facility

Karen_Sanchez

| No. | Full Name | Address | Phone | SSN |
|---|---|---|---|---|
| 2 | GUARDADO, KAREN LISETH GUARDADO, KAREN L SANCHEZ, KAREN LISSETH SANCHEZ, KAREN G SANCHEZ, KAREN L SANCHEZ, KAREN   (Gender: Female)(DOB: 01/1985)(Age: 39)(DOB: 01/1985)(Age: 39)(Gender: Female) | 13900 OVAL DR WHITTIER, CA 90605-2646 LOS ANGELES COUNTY (02/2012-Current) | | 624-84-XXXX (CA:1995-1996) LexID(sm): 040179136626 |
| | | 15 ELGIN ST APT C ALHAMBRA, CA 91801-2542 LOS ANGELES COUNTY (03/2017-06/2017) | | |
| | | 6341 HOLLENBECK ST HUNTINGTON PARK, CA 90255-4528 LOS ANGELES COUNTY (04/2016-09/2017) | | |
| | | 310 N ELECTRIC AVE APT E ALHAMBRA, CA 91801-2013 LOS ANGELES COUNTY (03/2016-03/2016) | | |
| | | 310 W WOODWARD AVE APT A ALHAMBRA, CA 91801-2277 LOS ANGELES COUNTY (02/2015-04/2018) | | |
| | | 321 W GRAND AVE APT 105 ALHAMBRA, CA 91801-2377 LOS ANGELES COUNTY (10/2014-05/2015) | | |
| | | 321 W GRAND AVE APT 105G ALHAMBRA, CA 91801-2352 LOS ANGELES COUNTY (07/2013-01/2014) | | |
| | | 808 NEW DEPOT ST LOS ANGELES, CA | | |

Karen_Sanchez

| No. | Full Name | Address | Phone | SSN |
| --- | --- | --- | --- | --- |
| | | 90012-1612<br>LOS ANGELES COUNTY<br>(02/2010-05/2015) | | |
| | | 39889 FALCON WAY<br>MURRIETA, CA 92562-4051<br>RIVERSIDE COUNTY<br>(06/2011-01/2013) | | |
| | | 121 W 61ST ST<br>LOS ANGELES, CA 90003-1401<br>LOS ANGELES COUNTY<br>(01/2006-03/2010) | | |
| | | 119 W 61ST ST<br>LOS ANGELES, CA 90003-1401<br>LOS ANGELES COUNTY<br>(01/2006-02/2011) | | |
| | | 528 W 79TH ST<br>LOS ANGELES, CA 90044-6024<br>LOS ANGELES COUNTY<br>(12/2005-02/2010) | | |
| | | 434 VISTA GLORIOSA DR<br>LOS ANGELES, CA 90065-2527<br>LOS ANGELES COUNTY<br>(08/2003-07/2005) | | |
| | | 1837 BROWNING BLVD<br>LOS ANGELES, CA 90062-1304<br>LOS ANGELES COUNTY<br>(05/2004-06/2004) | | |
| | | 5621 PARTRIDGE BLUFF ST<br>LAS VEGAS, NV 89130-1568<br>CLARK COUNTY<br>(01/2021-01/2021) | | |

Karen_Sanchez

| No. | Full Name | Address | Phone | SSN |
|-----|-----------|---------|-------|-----|

Key

⚠ High Risk Indicator. These symbols may prompt you to investigate further.

🔑 Moderate Risk Indicator. These symbols may prompt you to investigate further.

💬 General Information Indicator. These symbols inform you that additional information is provided.

✔ The most recent telephone listing as reported by Electronic Directory Assistance.

Terms:            first-name(Karen) last-name(Sanchez) state(ALL) radius(30) dob(1/XX/1985)
Date/Time:        Tuesday, March 19, 2024 1:52 PM
Permissible Use:  **Your DPPA Permissible Use: Litigation**
                  **Your Secondary DPPA Permissible Use: None**
                  **Your GLBA Permissible Use: Legal Compliance**

Copyright © 2024 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

**End of Document**

# EXHIBIT E

JVR No. 1703270032, 2017 WL 1136098 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2024 Thomson Reuters/West
Superior Court, San Francisco County, California.

HOEPER v. CITY AND COUNTY OF SAN FRANCISCO

CGC-15-543553
DATE OF INCIDENT: January 07, 2014
DATE OF FILING: January 07, 2015
DATE OF TRIAL/SETTLEMENT: March 17, 2017

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $2,029,357**

**Related Court Documents:**
Defendant's memorandum in support of summary judgment motion: 2016 WL 8417259

Plaintiff's memorandum opposing defendant's motion for summary judgment: 2016 WL 8417260

Order denying defendant's motion for summary judgment: 2016 WL 8411837

Plaintiff's trial brief: 2017 WL 839032

Defendant's trial brief: 2017 WL 839034

Verdict: 2017 WL 1080630


**EXPERT-WITNESSES:**
Plaintiff:
Economist: Allman, Philip, Ph.D., San Francisco, CA
Defendant:
Economist: Cohen, Mark, Udinsky Group, Berkeley, CA
**ATTORNEY:**
Plaintiff:
Therese Y. Cannata, Cannata, O'Toole, Fickes & Almazan L.L.P., San Francisco, CA
Karl Olson, Ram, Olson, Cereghino & Kopczynski L.L.P., San Francisco, CA
Defendant:
John W. Keker, Keker, Van Nest & Peters L.L.P., San Francisco, CA
Susan J. Harriman, Keker, Van Nest & Peters L.L.P., San Francisco, CA
Jennifer A. Huber, Keker, Van Nest & Peters L.L.P., San Francisco, CA

JUDGE: Lynn O'Malley-Taylor

RANGE AMOUNT: $2,000,000 - 4,999,999

STATE: California
COUNTY: San Francisco

EXHIBIT E - Page 2 of 19

HOEPER V. CITY AND COUNTY OF SAN FRANCISCO, JVR No. 1703270032 (2017)

**SUMMARY**
**PLAINTIFF:**
Sex: F

Age: Adult

General Occupation: Attorney

**DEFENDANT:**
Sex: O

Organization Type: City and County of San Francisco

**DAMAGES:**
Compensatory Pain & Suffering: $1,291,409

Compensatory Past Wages: $601,630

Compensatory Future Wages: $136,318

Total Compensatory Award: $2,029,357

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: false

Hostile Work Env: false

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.                    2

Isolation: false

Lay Off: false

Loss Benefits: true

Loss Pay: true

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: true

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true


**Entity Type: Government Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: State Statute


**Primary General Statute**
**Primary Name: Whistleblower**
Primary General Statute Discrimination: false

Specific Statute: General


**General Statute: Retaliation**
General Statute Discrimination: false

Comparative Negligence Percentage: 0


**FACTS:**
Joanne Hoeper, a former Chief Trial Deputy, brought this action against the City and County of San Francisco for Whistleblower
retaliation, in violation of Cal. Lab. Code Sec. 1102.5 and Cal Gov't Code Sec. 12653. The plaintiff claimed in December 2011,

EXHIBIT E - Page 4 of 19

an FBI agent gave her a tip about a possible fraudulent scheme, which involved payments by the defendant's claims bureau to property owners and plumbing companies to replace sewer lines purportedly damaged by the roots of city-owned trees. Hoeper asserted that she began an investigation which discovered that the city had paid out over $20 million in suspect claims, and that the claims bureau's assistant chief had illegally approved claims in which he or his family members had a financial interest. The plaintiff asserted that she first reported the fraudulent scheme during mid-April 2012 during a meeting with the City Attorney and the Managing City Attorney, and later provided a detailed report of her findings. She said the city attorney then began planning, without her knowledge, to remove her as Chief Trial Deputy, and transfer her to the San Francisco District Attorney's Office, and she was transferred in July 2012 without first arranging for a replacement. Hoeper argued that she was fired one day after the City Attorney was re-elected to a new term, and this was in retaliation for engaging in protected activity. The defendant denied the allegations and claimed that it terminated Hoeper for legitimate, non-retaliatory reasons, that the city attorney had already decided to remove her prior to the report about allegedly improper sewer claims because he had lost confidence in her judgment and her management of the trial team. The defendant argued that the City Attorney was concerned about the plaintiff's failure to litigate cases in a cost-effective manner, her inability to conduct proper cost-benefit analyses about settlement decisions, and her failure to keep him informed about the city's liability and exposure in significant cases until just before trial. It claimed that the city attorney attempted to address the issues with the plaintiff's performance by splitting the trial team and taking away responsibility for the most complex cases from the plaintiff. The defendant asserted that the City Attorney had begun searching for plaintiff's replacement during 2010, and spoke to fourteen candidates through February 2012. It claimed that the city attorney specifically created a temporary transfer position for Hoeper at the District Attorney's office to allow her to work until she turned 60 and reached 20 years of service. The jury found for the plaintiff and awarded her $601,630 in past lost earnings, $136,318 in future lost earnings, and $1,291,409 for emotional distress, mental anguish and humiliation.

Jury Verdict Research
COURT: Superior

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 1612050044, 2016 WL 7094518 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2024 Thomson Reuters/West
Superior Court, Sacramento County, California.

CARROLL v. ARMSTRONG; POPE; STATE OF CALIFORNIA COMMISSION ON TEACHER CREDENTIALING

34-2012-00135527-CU-OE-GDS
DATE OF FILING: November 14, 2012
DATE OF TRIAL/SETTLEMENT: August 10, 2016

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $3,064,528**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**Related Court Documents:**
Plaintiff's complaint: 2012 WL 12862565

Plaintiff's trial brief: 2016 WL 4367485

Defendant's trial brief: 2016 WL 4367480

Judgment: 2016 WL 5935601

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: Dan Siegel, Siegel & Yee, Oakland, CA
Plaintiff: Jalle Dafa, Siegel & Yee, Oakland, CA
Defendant: Kristin M. Daily, Office of the Attorney General, Sacramento, CA
Defendant: Jerry Deschler, Office of the Attorney General, Sacramento, CA
Defendant: Susan E. Slager, Office of the Attorney General, Sacramento, CA
Defendant: Chris A. Knudsen, Office of the Attorney General, San Diego, CA

JUDGE: Russell L. Hom

RANGE AMOUNT: $2,000,000 - 4,999,999

STATE: California
COUNTY: Sacramento

**SUMMARY**
**PLAINTIFF:**
Sex: F

Age: Adult

EXHIBIT E - Page 6 of 19

**DEFENDANT:**

Sex: N

Organization Type: Pope

Sex: N

Organization Type: Armstrong

Sex: O

Organization Type: State of California Commission on Teacher Credentialing

**DAMAGES:**

Compensatory Pain & Suffering: $750,000

Compensatory Past Wages: $481,225

Compensatory Future Wages: $932,200

Compensatory Other: $681,103

Total Compensatory Award: $2,844,528

Punitive Damages: $220,000

Hedonic Damages: $0

Property Damages: $0

Interest: $0

Other Damages: $0

Loss of Services: $0

**ADVERSE ACTION**

Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    2

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: true

Sexual Harassment: false

Harassment: false

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: true

Restrictions: false

Termination: true

**Entity Type: Government Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: State Statute

**Primary General Statute**
**Primary Name: Whistleblower**

Primary General Statute Discrimination: false

Comparative Negligence Percentage: 0

**FACTS:**

Kathleen Carroll, an attorney, sued Mary Armstrong, Lee Pope and the State of California Commission on Teacher Credentialing for violations of the California Whistleblower Protection Act, Cal. Gov't Code Sec. 8547.8(c), pursuant to Cal. Lab. Code Sec. 1102.5. The plaintiff, who worked as staff counsel, claimed her supervisors, Lee and Armstrong, reported a backlog of disciplinary allegations against California public school teachers when Armstrong reported to the Commission that there were few backlogs, but this was after an employee had recently expressed concern about the large backlogs. Carroll asserted that she believed the backlogs violated the California Education Code, the Americans with Disabilities Act, and the 14th Amendment of the United State Constitution. The plaintiff alleged that about one month after she reported the backlog to a whistleblower hotline, she was questioned by an investigator, hired by the Commission, and received a warning from Human Resources after she refused to continue participating because the investigator was antagonistic and accusatory, and repeatedly rephrased her answers incorrectly. Carroll claimed she provided additional information about Armstrong's and Pope's conduct for which she believed violated various laws during a subsequent audit investigation, but during the audit she was denied a raise, and was placed on leave. She argued that the defendants eventually terminated her employment for fabricated reasons following an investigation by Pope. According to Carroll, the audit report eventually found the Commission had been grossly mismanaged, neglected cases of misconduct, and led to the resignation of General Counsel Armstrong and the Executive Director. The defendants denied the allegations and contended the plaintiff's employment was terminated for valid reasons, including incompetency, inefficiency, inexcusable neglect of duty, insubordination, dishonesty, discourteous treatment of the public or other employees, willful disobedience, and other failures of good behavior and unlawful harassment. The defendant denied the plaintiff made a protected disclosure, and denied any causal nexus between any purported disclosure and her termination. A jury found for the plaintiff and awarded her $481,225 for past lost earnings, $932,200 for future lost earnings, $681,103 for future mention plan benefits, and $750,000 for emotional distress, pain and suffering. The jury also awarded Carroll $90,000 in punitive damages against Armstrong, and $130,000 punitive damages against Pope.

Jury Verdict Research
COURT: Superior

---

**End of Document**
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 1703300002, 2016 WL 8649664 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2024 Thomson Reuters/West

Superior Court, Los Angeles County, California.

HAWKINS v. CITY OF LOS ANGELES

BC541066
DATE OF FILING: April 01, 2014
DATE OF TRIAL/SETTLEMENT: June 17, 2016

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $427,162**

**Related Court Documents:**
Plaintiff Hawkins' first amended complaint: 2014 WL 12669302

Verdict form (Hawkins): 2016 WL 8446427

Verdict form (Kim): 2016 WL 8446424

Judgment on special verdict (Hawkins): 2016 WL 8452870

First amended ruling and order on defendant's motion for judgment notwithstanding the verdict: 2016 WL 8452866

First amended ruling and order on defendant's motion for a new trial: 2016 WL 8452869

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff:
David P. Myers, The Myers Law Group A.P.C., Rancho Cucamonga, CA
Doug Smith, The Myers Law Group A.P.C., Rancho Cucamonga, CA
Defendant:
Shanise Black, Office of the City Attorney, Los Angeles, CA
Dennis Kong, Office of the City Attorney, Los Angeles, CA

JUDGE: Ernest M. Hiroshige

RANGE AMOUNT: $200,000 - 499,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: Todd Hawkins: M

Age: Adult

General Occupation: Professional

Sex: Hyung Kim: M

Age: Adult

General Occupation: Professional


**DEFENDANT:**
Sex: O

Organization Type: City of Los Angeles


**DAMAGES:**
Compensatory Pain & Suffering: Todd Hawkins: $150,000

Compensatory Other: Todd Hawkins: $88,531

Total Compensatory Award: Todd Hawkins: $238,531

Compensatory Pain & Suffering: Hyung Kim: $100,000

Compensatory Other: Hyung Kim: $88,631

Total Compensatory Award: Hyung Kim: $188,631


**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: true

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: true

Restrictions: false

Termination: true

**Entity Type: Government Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: General

**Primary General Statute**
**Primary Name: Retaliation**
Primary General Statute Discrimination: false

Specific Statute: State

**General Statute: Race/Color Discrimination**
General Statute Discrimination: true

Comparative Negligence Percentage: 0

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.                3

**FACTS:**

Todd Hawkins and Hyung Kim, former Administrative Hearing Officers, sued the City of Los Angeles for retaliation, under Labor Code Sec. 1102.5(b). Hawkins, an African-American, also brought a claim under Govt. Code Sec. 12940(h) for retaliation based on race. The plaintiffs claimed they engaged in protected activity when they disclosed that they were allegedly being pressured by supervisors to change certain decisions on parking citations in favor of the City, in violation of California Vehicle Code Sec. 40215(c)(3) and the Bane Act, Civil Code Sec. 52.1. The plaintiffs argued that when they complained about allegedly being coerced into depriving motorists of their procedural due process rights, they spoke out as a matter of public concern as citizens, and not as part of their official duties, pursuant to 42 U.S.C.A. Sec. 1983. However, the plaintiffs claimed in retaliation, they were disciplined, and then terminated. Hawkins also claimed he was retaliated against for reporting discriminatory and harassing statements made to him by a supervisor, based on his race. The City denied liability and contended that the plaintiffs failed to prove they engaged in protected activity. The City argued that the plaintiffs were discharged for legitimate, independent reasons, that no law was violated because the alleged activity complained of concerned written City procedures, and that any changes to decisions were made to correct clerical mistakes. The jury found for the plaintiffs. Hawkins was awarded $88,531 in economic damages and $150,000 in non-economic damages. The court later awarded Hawkins an additional $33,952 in costs. The jury awarded Kim $88,631 in economic damages and $100,000 in non-economic damages, but found for the City on Kim's Sec. 1983 claim. The City's motion for judgment not withstanding the verdict or a new trial was denied. This case was consolidated with docket number BC543766.


Jury Verdict Research
COURT: Superior

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:24-cv-02341-SPG-BFM    Document 3    Filed 03/21/24    Page 75 of 113    Page ID
#:95
Watson v. Janssen Pharmaceuticals Inc. et al., 2022 WL 20508720 (2022)

2022 WL 20508720 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2024 Thomson Reuters/West

WEST'S JURY VERDICTS - CALIFORNIA REPORTS

Superior Court, Los Angeles County, California.

Watson v. Janssen Pharmaceuticals Inc. et al.

**Type of Case:**

Labor & Employment • Termination/Constructive Discharge

Labor & Employment • Retaliation

Labor & Employment • Age

Labor & Employment • Race/National Origin

Labor & Employment • Gender

Labor & Employment • Disability/Medical Condition

Labor & Employment • Wage Disputes

**Synopsis: Sales representative claimed she was terminated by employer for discriminatory reasons**

**Jurisdiction:**
State: California
County: Los Angeles

**Docket/File Number:** BC696761

**Trial Type: Jury**
**Verdict: Plaintiff, $890,080**

**Range Amount:** $500,000 - 999,999

Date of Filing: March 06, 2018
**Verdict/Judgment Date:** November 09, 2022

**Judge:** Unavailable
**Attorneys:**
Plaintiff: Carol L. Gillam, The Gillam Law Firm, Los Angeles, CA; Sara Heum, The Gillam Law Firm, Los Angeles, CA
Defendants: Mark A. Neubauer, Carlton Fields LLP, Los Angeles, CA; Meredith M. Moss, Carlton Fields LLP, Los Angeles, CA; Stephanie G. Chau, Carlton Fields LLP, Los Angeles, CA

**Breakdown of Award:**
**$870,215 to plaintiff from defendant Janssen Pharmaceuticals Inc. for past economic damages**
**$3,758 to plaintiff from defendant Janssen Pharmaceuticals Inc. for unpaid wages**
**$16,106 to plaintiff from defendant Janssen Pharmaceuticals Inc. for waiting time penalty**

**Summary of Facts:**

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    1

Case 2:24-cv-02341-SPG-BFM    Document 3    Filed 03/21/24    Page 76 of 113    Page ID
#:96
Watson v. Janssen Pharmaceuticals Inc. et al., 2022 WL 20508720 (2022)

Plaintiff Bonnie Watson, a 47-year-old African American woman, said she worked as a sales representative for defendant Janssen Pharmaceuticals Inc., under the supervision of defendant James Traino, a manager. The plaintiff said she filed several complaints about Traino for treating her differently and worse than her white male and female coworkers, but Janssen apparently failed to investigate these complaints. The plaintiff said Traino retaliated against her by excluding her from working on the hospital initiative, giving her low ratings on her 2016 performance review, and selecting her for a travel and expenses audit. The plaintiff said she became disabled when she developed anxiety and depression during her employment, took a 12-week leave of absence beginning in December 2016, and requested to work three days per week upon her return to work in June 2017. The plaintiff said the defendants failed to accommodate her disability or engage in the required interactive process and failed to pay her for all hours worked. The plaintiff said she was terminated in June 2017, and the defendants reportedly claimed the reasons for her termination were customer relations, her receipt of a final written warning letter because of those customer relations issues, and the expense audit report findings while she was still on a final written warning.

The plaintiff asserted claims for gender, race, color, and ancestry discrimination, disability discrimination, retaliation, harassment, failure to provide reasonable accommodations for a disability, failure to engage in the interactive process, failure to take reasonable steps to prevent/remedy discrimination, harassment, and/or retaliation, in violation of FEHA, retaliation based on FEHA, retaliation based on quid pro quo, violation of California Family Rights Act, wrongful discharge in violation of public policy, and failure to pay all wages due at termination and waiting time penalties.

The plaintiff sought damages, including punitive damages.

The defendant denied the plaintiff's allegations, contending the plaintiff was terminated for legitimate, non-discriminatory reasons. Specifically, the defendant said the plaintiff had difficulties getting along with coworkers, had negative interactions with customers, and was given a final written warning in April 2016 by the defendant after she was kicked out of two doctor's offices. The defendant said issues arose from the plaintiff's expense audit and because she had already received a final written warning the prior year, termination was the only option. Janssen also said it accommodated the plaintiff's disability with a six-month paid medical leave and reduced work schedule and there was no evidence of Traino harassing the plaintiff because of her protected status.

JVR 2306210039

---

**End of Document**                                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT E - Page 15 of 19

JVR No. 2308010007, 2023 WL 4890639 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2024 Thomson Reuters/West
Superior Court, Los Angeles County, California.

WHITHORN v. CITY OF WEST COVINA

20STCV08916
DATE OF FILING: March 03, 2020
DATE OF TRIAL/SETTLEMENT: May 05, 2023

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $4,145,595**

**EXPERT-WITNESSES:**
Defendant:
City Management: Gould, Rodney, Santa Monica, CA
**ATTORNEY:**
Plaintiff:
Carney R. Shegerian, Shegerian & Associates Inc., Los Angeles, CA
John David, Shegerian & Associates Inc., Los Angeles, CA
Anna Olevsky, Shegerian & Associates Inc., Los Angeles, CA
Defendant:
Thomas M. O'Connell, Buchalter APC, Los Angeles, CA
Jennifer M. Misetich, Buchalter APC, Los Angeles, CA
Natalie Bryans, Buchalter APC, Los Angeles, CA

JUDGE: Maurice A. Leiter

RANGE AMOUNT: $2,000,000 - 4,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: M

Age: Adult, 50

General Occupation: Fire Fighter

**DEFENDANT:**
Sex: O

Organization Type: City of West Covina

EXHIBIT E - Page 16 of 19

WHITHORN V. CITY OF WEST COVINA, JVR No. 2308010067 (2023)

**DAMAGES:**

Compensatory Pain & Suffering: $2,567,849

Compensatory Other: $1,577,746

Total Compensatory Award: $4,145,595

**ADVERSE ACTION**

Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: true

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: true

Hostile Work Env: true

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.                    2

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true


**Entity Type: Government Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: State


**Primary General Statute**
**Primary Name: Disability Discrimination**
Primary General Statute Discrimination: true

Specific Statute: State


**General Statute: Age Discrimination**
General Statute Discrimination: true

Specific Statute: General


**General Statute: Retaliation**
General Statute Discrimination: false

Specific Statute: State Statute


**General Statute: Whistleblower**
General Statute Discrimination: false

Specific Statute: General


**General Statute: Wrongful Termination**
General Statute Discrimination: false

Comparative Negligence Percentage: 0


**FACTS:**
Plaintiff Larry Whithorn, a 50-year-old male employed as the fire chief for the city of West Covina, Calif. who reportedly
received outstanding performance reviews throughout his employment, said he had actual and/or perceived disabilities that

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    3

required him to take medical leaves to undergo surgeries for a serious medical condition and for a knee injury. The plaintiff said when he took additional medical leaves for subsequent surgeries and to care for his ill father, his supervisor informed him that he was receiving pressure to require the plaintiff to come to work or replace him with another employee.

The plaintiff contended during his employment, he complained to the defendant's Human Resources (HR) director about unethical conduct, and shortly thereafter he was allegedly harassed, verbally assaulted and/or threatened and subjected to a hostile work environment. The plaintiff said he also heard rumors and/or remarks that his employment would be terminated and/or that he should retire.

The plaintiff claimed after he reported the incidents to HR and filed a grievance with the acting city manager, his grievance was denied and he was asked when he planned to retire. The plaintiff said he was then asked by the city attorney and the interim city manager to resign. According to the plaintiff, when he refused to resign, his employment was terminated.

The plaintiff said he was subjected to a hostile work environment, harassment and subsequent adverse employment actions due to his age and actual and/or perceived disabilities and for taking medical leave for his disabilities. The plaintiff also said he was retaliated against after taking medical leave and after he opposed allegedly illegal and/or unethical conduct.

The plaintiff asserted multiple claims, which included disability and age discrimination and retaliation in violation of the California Fair Employment and Housing Act (FEHA), failure to prevent discrimination and/or retaliation in violation of FEHA, whistleblower retaliation in violation of the California Labor Code Section 1102.5 et seq., and claims for wrongful termination and intentional infliction of emotional distress (IIED).

For damages, the plaintiff sought general and special damages in excess of $25,000, as well as punitive damages for the defendant's alleged wrongful conduct, together with costs and attorney fees.

The defendant denied liability and denied it wrongfully terminated the plaintiff's employment or took any unlawful actions against him. Rather, the defendant contended the plaintiff's employment was terminated due to his job performance and/or poor leadership and was also in response to the Firefighters Association's vote of no confidence.

The defendant further disputed the nature and extent of the plaintiff's claimed damages.


Jury Verdict Research
COURT: Superior

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT E - Page 19 of 19

# EXHIBIT F

Case 2:24-cv-02341-SPG-BFM    Document 3    Filed 03/21/24    Page 82 of 113    Page ID #:102

Silverman vs. Stuart F. Cooper Inc., 43 Trials Digest 16th 11 (2013)

43 Trials Digest 16th 11, 2013 WL 5820140 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2024 Thomson Reuters/West

Superior Court, Los Angeles County, California.

Silverman vs. Stuart F. Cooper Inc.

**TOPIC:**

Synopsis: Terminated employee claims age discrimination

Case Type: Labor & Employment; Discrimination; Labor & Employment; Age; Labor & Employment; Harassment-General; Labor & Employment; Termination/Constructive Discharge

DOCKET NUMBER: BC467464

STATE: California
COUNTY: Los Angeles

Verdict/Judgment Date: July 19, 2013

JUDGE: Deirdre H. Hill

**ATTORNEYS:**

Plaintiff: Allen J. Beck, Gleason & Favarote, Los Angeles; Paul M. Gleason, Gleason & Favarote, Los Angeles; Janet S. Yavrouian, Gleason & Favarote, Los Angeles.

Defendant: Charles J. Schufreider, Barton, Klugman & Oetting, Los Angeles.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $325,223

Range: $200,000-499,999

$133,222 to plaintiff for past loss of earnings

$40,668 to plaintiff for future loss of earnings

$116,333 to plaintiff for past emotional distress

$35,000 to plaintiff for future emotional distress

The jury found defendants Stuart F. Cooper Inc. or Burdge Cooper Inc. acted with oppression, fraud or malice but declined to award punitive damages.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

Silverman vs. Stuart F. Cooper Inc., 43 Trials Digest 16th 11 (2013)

Case 2:24-cv-02341-SPG-BFM    Document 3    Filed 03/21/24    Page 83 of 113    Page ID #:103

**EXPERTS:**
Plaintiff: Not reported.
Defendant: Not reported.

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**
According to court records: Plaintiff Joe Silverman was hired by defendant Stuart F. Cooper Inc. in 1994 as a salesman. Plaintiff said he was compensated with a base salary, commission, expense reimbursement and medical benefits, regardless of sales performance. Plaintiff said his sale performance fluctuated, but he was never subjected to discipline, and he achieved an acceptable sales record. In August 2009, plaintiff was reportedly demoted by defendant David Overgaar, defendant Stuart Cooper's president, without warning and his compensation package was changed. His compensation change converted him to 100 percent commission and limited his automobile reimbursement to $200 per month. Plaintiff said the company had never forced such a compensation package on any other employee. The new package also established a sales quota for plaintiff in order to return to his prior compensation plan. He said he was required to have sales of at least $90,000 over a six-month period with no single job accounting for more than 30 percent of sales. This quota was unprecedented and never applied to other sales employees, plaintiff claimed.

In November 2009, another sales representative, 49, was allegedly hired with a salary plus commissions compensation package.

In October 2010 plaintiff, 76, apparently filed a claim for age discrimination with the Department of Fair Employment and Housing based on the demotion and his change in compensation. Within six months of his complaint, plaintiff said, plaintiff was terminated by defendant Burdge Cooper Inc. for the pretextual reason of "poor attitude."

Plaintiff alleged age discrimination in violation of the Fair Employment and Housing Act and public policy, unlawful retaliation in violation of the FEHA, age harassment in violation of the FEHA, failure to prevent discrimination and harassment in violation of the FEHA, wrongful termination in violation of public policy and failure to pay final wages and waiting time penalties.

**CLAIMED INJURIES**
According to court records:
Emotional distress.

**CLAIMED DAMAGES**
According to court records:
Not reported.

**SETTLEMENT DISCUSSIONS**
According to court records:

Not reported.

**COMMENTS**
According to court records:

The complaint was filed Aug. 12, 2011.

EXHIBIT F Page 3 of 18

Case 2:24-cv-02341-SPG-BFM    Document 3    Filed 03/21/24    Page 84 of 113    Page ID
#:104

Silverman vs. Stuart F. Cooper Inc., 43 Trials Digest 16th 11 (2013)

Trials Digest, A Thomson Reuters/West business
Los Angeles County Superior Court/Downtown

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 1402210041, 2013 WL 7852947 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2024 Thomson Reuters/West
Superior Court, Los Angeles County, California.

VASQUEZ v. LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY

BC484335
DATE OF FILING: October 25, 2012
DATE OF TRIAL/SETTLEMENT: November 12, 2013

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $1,904,635**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**Related Court Documents:**
Plaintiff's second amended complaint: 2012 WL 10007313

Defendant's trial brief: 2013 WL 6506751

Verdict form: 2013 WL 6506795

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: Scott O. Cummings, Cummings & Franck P.C., Gardena, CA
Plaintiff: Lee Franck, Cummings & Franck P.C., Gardena, CA
Defendant: Calvin R. House, Gutierrez Preciado & House L.L.P., Pasadena, CA
Defendant: Caroline Shahinian, Gutierrez, Preciado & House L.L.P., Pasadena, CA

JUDGE: Kevin C. Brazile

RANGE AMOUNT: $1,000,000 - 1,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: M

Age: Adult

General Occupation: General Laborer

EXHIBIT F - Page 5 of 18

**DEFENDANT:**
Sex: O

Organization Type: Los Angeles County Metropolitan Transportation Authority

**DAMAGES:**
Compensatory Pain & Suffering: $1,250,000

Compensatory Future Medical: $185,000

Compensatory Past Wages: $84,348

Compensatory Future Wages: $385,287

Total Compensatory Award: $1,904,635

Punitive Damages: $0

Hedonic Damages: $0

Property Damages: $0

Interest: $0

Other Damages: $0

Loss of Services: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: true

Failure Grant Leave: true

Failure Hire: true

Failure Promote: false

Suspension: true

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.                    2

Sexual Harassment: false

Harassment: true

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: true

Restrictions: false

Termination: true


**Entity Type: Government Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: State


**Primary General Statute**
**Primary Name: Disability Discrimination**
Primary General Statute Discrimination: true

Specific Statute: State


**General Statute: Family and Medical Leave**
General Statute Discrimination: false

Specific Statute: General

EXHIBIT F Page 7 of 18

**General Statute: Retaliation**
General Statute Discrimination: false

Comparative Negligence Percentage: 0


**FACTS:**

Raphael Vasquez, a former bus driver, sued the Los Angeles County Metropolitan Transportation Authority for disability discrimination, failure to accommodate, failure to engage in the interactive process, in violation of the Americans with Disabilities Act (ADA), and interference with the Family and Medical Leave Act (FMLA) and the California Family Rights Act (CFRA), and retaliation in violation of the Fair Employment and Housing Act (FEHA) Cal. Gov't. Code Secs. 12940 et seq. The plaintiff alleged during his employment, he suffered from a variety of disabilities, including but not limited to gout, cataracts, blurry vision, diabetes, for which he treated with doctors, and in January 2010, he requested a medical leave of absence for hip replacement surgery due to Avascular Necrosis of the femur, which the defendant admitted he was eligible for, and he provided the necessary documentation indicating he would be out for approximately five months. He asserted following the surgery, his doctor provided a note that he was unable to work until June 1, 2010 due to Trochanteric Bursitis, and aftercare from his hip replacement, thereafter, he was cleared to return to work. Vazquez claimed in November 2010, he had cataract surgery, but the defendant began to use his disabilities for adverse actions, including discipline and suspensions, and in January 2011, he was terminated, and the proffered reason for his termination was his attendance. He asserted the defendant failed to engage in a timely, good faith, interactive process to determine the most effective reasonable accommodations for him, discouraged the use of FMLA leave, which violated the CFRA, and that his disability, his request for and/or taking medical leave were substantial motivating factors in the decision to terminate him. The defendant denied the allegations and contended the plaintiff was charged with excessive absenteeism after accumulating eight absences within a 12-month period, and at his discharge hearing he told the hearing officer he was in perfect health, but that he had treated some medical conditions. The defendant argued that the officer had no reason to believe the plaintiff might be disabled, and terminated him for violating it's attendance policy.


Jury Verdict Research
COURT: Superior

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works. EXHIBIT F, Page 8 of 18

JVR No. 1104250047, 2011 WL 2912831 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2024 Thomson Reuters/West

Superior Court, Orange County, California.

LIEMANDT v. MEGA RV CORP.

30-2010-00388086

DATE OF TRIAL: February 04, 2011

TOPIC:

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total Verdict: $435,000**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: John A. Belcher, Pasadena, CA
Jeremy Golan, Los Angeles, CA
Defendant: William J. Tebbe, Los Angeles, CA
Adam K. Obeid, Irvine, CA

JUDGE: Not Available

RANGE AMOUNT: $200,000 - 499,999

STATE: California
COUNTY: Orange

**SUMMARY**
**PLAINTIFF:**
Sex: Male

Age: Adult, 68

**DECEDENT:**
**DEFENDANT:**
Sex: Organization

Inactive Defendant (for organization): Mega RV Corp.

Policy Limit:

Other Expenses: $0

EXHIBIT F, Page 9 of 18

LIEMANDT v. MEGA RV CORP., JVR No. 1104250047 (2011)

**ENTITY TYPE: General Business Entity**
**DAMAGES:**
Compensatory Past Medical Award: $0

Compensatory Future Medical Award: $0

Compensatory Past Wages Award: $0

Compensatory Future Wages Award: $0

Compensatory Pain And Suffering Award: $385,000

Other Compensatory Award: $0

Total Compensatory Award: $385,000

Punitive Damages: $50,000

Hedonic Damages: $0

Property Damages: $0

Other Damages: $0

Interest: $0

Loss of Service: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: true

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    EXHIBIT F – Page 10 of 18    2

LIEMANDT V. MEGA RV CORP., JVR No. 1104250047 (2011)

Sexual Harassment: false

Harassment: false

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true


**STATUTES**
**Primary Specific Statute**
Primary Name: State


**Primary General Statute**
Primary Name: Age Discrimination

Primary general Statute Discrimination: true

Comparative Negligence Percentage: 0


**FACTS:**
A 68-year-old salesman sued the defendant claiming age discrimination in violation of state law. The plaintiff contended that the defendant wrongfully terminated him due to his age after it demoted him from his management position to a sales position on his return to work after suffering a massive heart attack. The defendant denied the allegations and claimed that the plaintiff

EXHIBIT F – Page 11 of 18

was fired for poor performance and insubordination. It further claimed that more than 70 percent of its employees were more than 50-years-old.

Jury Verdict Research
COURT: Superior

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 1105250063, 2011 WL 3293268 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2024 Thomson Reuters/West
Superior Court, Los Angeles County, California.

WELCH v. IVY HILL CORP.

BC414667

DATE OF TRIAL: March 08, 2011

TOPIC:


**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total Verdict: $1,270,000**
**Judge Reduced Award To:**
HIGH AMOUNT: $0


LOW AMOUNT: $0


**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: Carney R. Shegerian, Santa Monica, CA
Defendant: Kelly O. Scott, Beverly Hills, CA
Karina B. Sterman, Beverly Hills, CA
Jennifer S. Grock, Beverly HIlls, CA

JUDGE: Not Available

RANGE AMOUNT: $1,000,000 - 1,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: Female

Age: Adult, 62


**DECEDENT:**
**DEFENDANT:**
Sex: Organization

Inactive Defendant (for organization): Ivy Hill Corp.

Policy Limit:

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.                1

Other Expenses: $0

**ENTITY TYPE: General Business Entity**
**DAMAGES:**
Compensatory Past Medical Award: $0

Compensatory Future Medical Award: $0

Compensatory Past Wages Award: $0

Compensatory Future Wages Award: $0

Compensatory Pain And Suffering Award: $1,270,000

Other Compensatory Award: $0

Total Compensatory Award: $1,270,000

Punitive Damages: $0

Hedonic Damages: $0

Property Damages: $0

Other Damages: $0

Interest: $0

Loss of Service: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

EXHIBIT F – Page 14 of 18

Sexual Harassment: false

Harassment: true

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true


**STATUTES**
**Primary Specific Statute**
Primary Name: State


**Primary General Statute**
Primary Name: Age Discrimination

Primary general Statute Discrimination: true

Comparative Negligence Percentage: 0


**FACTS:**

A 62-year-old former account executive sued the defendant company claiming age discrimination in violation of state law. The plaintiff alleged that the defendant wrongfully terminated her due to her age, that her most profitable accounts were taken

rom her, and that she was harassed by her supervisor. The defendant denied the allegations and claimed that the plaintiff was terminated due to a shutdown after the company was sold, and that it was the decision of the acquiring company as to whom it would hire. The defendant further contended that the plaintiff's most profitable account was taken from her t the request of the client.

Jury Verdict Research
COURT: Superior

---

**End of Document**                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:24-cv-02341-SPG-BFM    Document 3    Filed 03/21/24    Page 97 of 113   Page ID
#:117
Department of Fair Employment and Housing vs. County... 13 Trials Digest 9th 7...

13 Trials Digest 9th 7, 2003 WL 24304125 (Cal.Superior) (Verdict and Settlement Summary)

Copyright (c) 2024 Thomson Reuters/West
Superior Court, Riverside County, California.

Department of Fair Employment and Housing vs. County of Riverside

**TOPIC:**

Synopsis: Worker who was injured on the job alleges disability discrimination

Case Type: Labor & Employment; Disability/Medical Condition; Labor & Employment; Discrimination; Labor & Employment; Termination/Constructive Discharge

DOCKET NUMBER: RIC352666

STATE: California
COUNTY: Riverside

Verdict/Judgment Date: October 16, 2003

JUDGE: Dallas Holmes

**ATTORNEYS:**

Plaintiff: Joseph H. Duff, Department of Fair Employment and Housing, Los Angeles.; Paul R. Ramsey, Department of Fair Employment and Housing, Los Angeles.; Eddie L. Washington, Department of Fair Employment and Housing, Los Angeles. Defendant: Bruce E. Disenhouse, Kinkle, Rodiger and Spriggs, Riverside.; Intervenor: Deborah A. Krane, Law Offices of Deborah A. Krane, Burbank.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $460,000

Range: $200,000-$499,999
$160,000 economic; $300,000 non-economic.

Trial Type: Jury

Trial Length: Not reported.

Deliberations: Not reported.

Jury Poll: Not reported.

**EXPERTS:**

Plaintiff: Arnold D. Purisch Ph.D., neuropsychologist, Laguna Hills, (949) 829-8141.
Defendant: William Soltz Ph.D., psychologist, San Bernardino, (909) 886-4554.; Tony L. Strickland Ph.D., neuropsychologist, Playa Del Rey, (323) 563-5915.

**TEXT:**

EXHIBIT F – Page 17 of 18

Case 2:24-cv-02341-SPG-BFM    Document 3    Filed 03/21/24    Page 98 of 113    Page ID #:118

Department of Fair Employment and Housing vs. County... 13 Trials Digest 9th 7...

## CASE INFORMATION

**FACTS/CONTENTIONS**

According to Plaintiff: Plaintiff-in-intervention, William Clark, was employed by defendant County of Riverside as a sheriff investigator. Clark suffered an on-the-job injury. He alleged that he subsequently became disabled and requested a reasonable accommodation for his claimed disability. He claimed that defendant failed and refused to engage in a timely, good faith interactive process with him for the purposes of ascertaining the precise parameters of the reasonable accommodations necessary to return him to his employment with defendant.

On or about October 13, 1999, Clark filed a charge of discrimination against defendant with plaintiff Department of Fair Employment and Housing. Plaintiff in turn filed this proceeding on or about December 26, 2000, naming Clark as the Real Party in Interest.

Plaintiff and Clark are claiming that he was injured emotionally and financially by defendant's actions.

Defendant disputed the nature and extent of the claims.

**CLAIMED INJURIES**

According to Plaintiff: Emotional distress.

**CLAIMED DAMAGES**

According to Plaintiff: $62,398 to $106,080 lost wages; $300,000 emotional distress damages.

**SETTLEMENT DISCUSSIONS**

According to Plaintiff: Not reported.

Trials Digest, A Thomson/West business
Riverside County Superior Court/Central

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT G

2010 WL 5383296 (Cal.Superior) (Verdict and Settlement Summary)

Copyright (c) 2019 ALM Media Properties, LLC. All Rights Reserved
Superior Court, Los Angeles County, California.

Mark A. Crawford v. DIRECTV Inc.

No. BC417507
DATE OF VERDICT/SETTLEMENT: September 29, 2010
TOPIC: EMPLOYMENT - DISABILITY DISCRIMINATION - EMPLOYMENT - FAILURE TO ACCOMMODATE -
EMPLOYMENT - WRONGFUL TERMINATION - EMPLOYMENT - RETALIATION - EMPLOYMENT - CALIFORNIA'S
FAIR EMPLOYMENT & HOUSING ACT

Worker With Ptsd Said He Was Forced to Watch Combat Footage

**SUMMARY:**
RESULT: Arbitration

Award Total: $353,172

The parties entered arbitration, and the arbiter found DIRECTV had failed to offer Crawford reasonable accommodations or
engage in the interactive process required by FEHA after Crawford was placed on leave. He found no wrongful termination,
retaliation or discrimination.

Crawford was awarded $149,234 for past lost income, $25,200 for non-economic damages, $159,762.50 for attorney fees,
$11,123.30 for arbitration costs, and $7,851.80 for prejudgment interest.

**EXPERT WITNESSES:**
Plaintiff: David T. Factor; Economics; Pasadena, CA
**ATTORNEYS:**
Plaintiff: Vincent Calderone; Bononi Law Group; Los Angeles, CA (Mark A. Crawford)
Defendant: Dianne Baquet Smith; Sheppard, Mullin, Richter & Hampton; Los Angeles, CA (DIRECTV Inc.)

JUDGE: Sherman W. Smith

RANGE AMOUNT: $200,000-499,999

STATE: California
COUNTY: Los Angeles

**INJURIES: Crawford claimed he was terminated from his job due to DIRECTV's failure to grant him reasonable
accommodation of his disability. He sought an unspecified amount for lost income and non-economic damages.**

**Facts:**
In 1999, plaintiff Mark Crawford, a veteran of the first Gulf War, was hired as a broadcast operator at DIRECTV's Los Angeles
broadcast center. In October 2006, his schedule was changed from Sunday through Wednesday to Wednesday through Sunday.
He requested a return to his original schedule, claiming he was participating in therapy for post-traumatic stress disorder on

his original days off. He also submitted a note from his social worker which stated that viewing violent images aggravated his condition. He was not returned to his original schedule.

In April 2007, Crawford was placed on administrative leave after two supervisors reported what they claimed was a threatening e-mail. After an evaluation, he was found medically unfit for his position due to his PTSD and placed on medical leave. He was terminated in April 2008 when the leave was exhausted.

Crawford sued DIRECTV, alleging violations of the Fair Employment and Housing Act, wrongful termination and retaliation. He claimed DIRECTV failed to offer him reasonable accommodations for his disability or engage in an interactive process after he was placed on leave. He alleged he requested a reasonable accommodation to a position where he would not be required to watch unedited combat footage, and that he knew of and was qualified for a number of such positions at the company. He claimed no discussions of accommodations were made after he was placed on medical leave.

DIRECTV argued that Crawford did not claim any disabilities prior to his schedule change and that it offered him reasonable accommodations such as days off, job transfers, or a leave of absence, but that he refused them. DIRECTV claimed no accommodations were possible after Crawford was placed on leave as he was never medically cleared to return to work. It further argued there were no available positions where Crawford would not be required to view violent images. The defense contended Crawford was terminated because he was not medically cleared to return to work at the time he ran out of medical leave time.

ALM Properties, Inc.
Superior Court of Los Angeles County, Central

PUBLISHED IN: VerdictSearch California Reporter Vol. 9, Issue 48

---

**End of Document**                                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:24-cv-02341-SPG-BFM    Document 3    Filed 03/21/24    Page 102 of 113    Page
ID #:122
Davis v. Robert Bosch Tool Corp., Not Reported in Cal.Rptr.3d (2007)

KeyCite Red Flag - Severe Negative Treatment
Unpublished/noncitable   July 13, 2007

2007 WL 2014301
Not Officially Published
(Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)
Only the Westlaw citation is currently available.

California Rules of Court, rule 8.1115, restricts
citation of unpublished opinions in California courts.

Court of Appeal, Second District, Division 5, California.

Kenneth DAVIS, Plaintiff and Respondent,

v.

ROBERT BOSCH TOOL CORP.
et al., Defendants and Appellants.

No. B185408.
|
(Los Angeles County Super. Ct. No. BC310229).
|
July 13, 2007.

APPEAL from a judgment of the Superior Court of Los
Angeles County. Victor E. Chavez, Judge. Affirmed in part
and reversed in part.

**Attorneys and Law Firms**

Connelly Sheehan Harris LLP, Rachel B. Cowen, Ellen
DeVoe Stuart and Michael Sheehan, pro hac vice; Swerdlow
Florence Sanchez Swerdlow & Wimmer, & David A.
Wimmer, and Janet Swerdlow for Defendants and Appellants.

Nikki Tolt; Jeffrey A. Brightwell; Benedon & Serlin,
Gerald M. Serlin and Douglas G. Benedon for Plaintiff and
Respondent.

**Opinion**

ARMSTRONG, Acting P.J.

**\*1** In our original opinion in this matter filed March 28,
2007, we reversed a judgment in favor of Davis against
Robert Bosch Corporation. Davis petitioned for a rehearing
contending that the judgment should be affirmed because we
had erroneously concluded that Robert Bosch Corporation
had filed a timely notice of appeal. We granted re-
hearing, vacated our decision, and requested briefing. Having

reviewed the briefs of the parties, we have determined, for a
reason different than the one stated in the original opinion,
that Robert Bosch Corporation's notice of appeal was timely.
Thus, there is no change in the judgment in this restated
opinion.

Ralph Kenneth Davis sued the Robert Bosch Tool
Corporation ("Bosch"), the Robert Bosch Corporation
("the Parent"), and Bosch executive Gary Tharp for
misrepresentation and deceit, breach of an implied contract
not to discharge except for good cause, age discrimination
in violation of FEHA, wrongful termination based on age in
violation of public policy, invasion of privacy, defamation,
and Labor Code violations.

The case went to trial on causes of action for breach of
implied contract not to fire without good cause, wrongful
termination based on age, defamation, and for unpaid wages.
Davis prevailed on the causes of action for breach of contract
and for unpaid wages. Defendants prevailed on the causes of
action for age discrimination and defamation.

Bosch and the Parent appealed, challenging the sufficiency
of the evidence for the jury verdict and the inclusion of the
Parent in the judgment. Davis cross-appealed, raising issues
concerning damages and costs. We reverse the judgment as to
the Parent, and in all other respects affirm.

Summary [1]

Bosch manufactures power tools. Davis was a Bosch
salesman. He began work at Bosch in 1982, and did well,
winning awards and receiving good performance evaluations.
He was paid a salary and commissions.

The facts concerning his dismissal involve a Bosch program
called SPIFF (Special Promotional Incentive Fund Field
Staff), under which Bosch, through district sales managers
like Davis, made small payments to store salesclerks who
sold specified Bosch tools. Bosch's evidence was that early
in 2002, it observed that Davis's SPIFF payments were
exceptionally large and that his SPIFF accounting was
otherwise problematic. It conducted an internal audit, put
Davis on an unpaid suspension, then hired an investigator,
Kroll and Associates, to further investigate. According to
Bosch, Davis was fired because he had falsified and forged
documents and violated the company's policies concerning
the SPIFF program. Davis's evidence was that many of his

EXHIBIT G - Page 4 of 15

SPIFF practices were in compliance with rules and/or had been approved by supervisors, and that in any event he used the SPIFF program to sell more tools, for the benefit of the company. Further, Bosch's investigation was defective. Davis's case was that he was terminated due to his age.

On special verdicts, the jury found that Bosch or the Parent had promised by words or conduct not to discharge Davis except for good cause, that Davis had performed his job duties, that Bosch or the Parent had discharged him without good cause, and that he had suffered economic losses of $195,000; and, on the wage claim, that Bosch or the Parent had willfully withheld wages of $68,025. The jury found against Davis on the age discrimination and defamation causes of action. The court found that the wage claim was encompassed within the breach of contract award, and awarded waiting time penalties for the willfully withheld wages and prejudgment interest on those wages. On Davis's motion for attorney fees (Lab.Code, § 218.5) the court awarded $45,350. Both Davis and Tharp were awarded costs.

The appeal

1. The notice of appeal

*2  Bosch's argument is that the trial court erred in denying its motion for judgment notwithstanding the verdict. Davis contends that we have no jurisdiction to hear the question, because the ruling is not encompassed in the notice of appeal.

We see no such obstacle. Bosch's notice of appeal states that it is an appeal "from the Judgment entered on June 7, 2005." It then states "Notice of Entry of Judgment was mailed by the Clerk in Department 96 on June 7, 2005. Defendant timely filed a Motion for New Trial, a Motion for Judgment not Withstanding the Verdict, and a Motion to Vacate Judgment, all of which were denied on July 19."

Our Supreme Court has instructed us to read a notice of appeal liberally, and given such a reading, we think that this notice of appeal is adequate to challenge the denial of the motion notwithstanding the verdict. Walker v. Los Angeles County Metropolitan Transportation Authority (2005) 35 Cal.4th 15 considered a notice of appeal which stated only that the appeal was from an order denying a new trial, a non-appealable order. The Court held that "[b]ecause '[t]he law aspires to respect substance over formalism and nomenclature' [citation] a reviewing court should construe a notice of appeal from an

order denying a new trial to be an appeal from the underlying judgment when it is reasonably clear the appellant intended to appeal from the judgment and the respondent would not be misled or prejudiced." (Id. at p. 22, see also Gu v. BMW of North America, LLC (2005) 132 Cal.App.4th 195, 203 [under Walker, appeal from order sustaining demurrer without leave to amend is interpreted as appeal from the judgment].)

Here, as Davis argues, unlike Walker, the issue concerns not a non-appealable order denying a new trial, but an order which can be appealed. (Code Civ. Proc., § 904.1, subd. (a)(4).) However, Walker directs us to look to substance, not form. Bosch's notice of appeal specifically mentions the denial of the motion for judgment notwithstanding the verdict, and we think that it is reasonably clear that Bosch intended to appeal from the ruling. Nor can we find that Davis is prejudiced by our interpretation of the notice. The notice of appeal informed him that the ruling was at issue. Moreover, Bosch most certainly appealed the judgment, and the standard of review for appeal of a judgment notwithstanding the verdict is the same. (Sweatman v. Department of Veterans Affairs (2001) 25 Cal.4th 62, 68.)

2. Waiver

Bosch's first issues on appeal are challenges to the sufficiency of the evidence for the finding of wrongful termination. Bosch contends that Davis did not present evidence to rebut the presumption of at will employment or prove that his discharge was not for good cause. Bosch also contends that the evidence was insufficient for the jury finding that Bosch owed wages. As Davis contends, Bosch has not presented us with a full record of the evidence presented to the jury. We thus must affirm.

*3  The missing evidence was proffered by Davis, who, as part of his case-in-chief, played portions of the videotaped depositions of Bosch Chief Financial Officer Katina Xouria, Bosch Director of Human Resources Sharon Glieberman, Bosch regional manager Bryan Jackman, former Bosch employee Noel Kidd, and Tony Alvizu of Kroll. The videotapes were not transcribed by the court reporter, and neither party offered the tapes or any transcript into evidence. Thus, despite the fact that Bosch designated the entire reporter's transcript, our record includes no evidence of the content of the tapes.

We may not reverse a judgment until we have examined "the entire cause, including the evidence." (Cal. Const., art. 6, §

Davis v. Robert Bosch Tool Corp., Not Reported in Cal.Rptr.3d (2007)

13) We must presume in favor of the judgment, and that error must be demonstrated. "[I]t is settled that: 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' (3 Witkin, Cal. Procedure (1954) Appeal, § 79, pp. 2238-2239; *Minardi v. Collopy,* 49 Cal.2d 348, 353; *Coleman v. Farwell,* 206 Cal. 740, 742.)" ( *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

Bosch's argument on this point is that, since it designated the entire reporter's transcript, it was up to Davis to augment the record with the tapes. (Of course, since the tapes were neither transcribed nor entered into evidence, augmentation is not quite right. An agreed or settled statement would be required. (Cal. Rules of Court, rules 8.134 and 8.137).) In legal support, Bosch relies on *McMahon v. Superior Court* (1946) 29 Cal.2d 515 and  *Skoglie v. Crumley* (1972) 26 Cal.App.3d 294.

*McMahon* arose from trial court proceedings to settle a transcript. The petitioner (the case involved a request for writ of mandate) had asked the trial court to settle and certify a transcript, but the motion was denied after a party below objected on grounds of lack of completeness. The Court explained that "It is apparent that the parties have been proceeding under the practice which obtained prior to the adoption of the new Rules on Appeal (22 Cal.2d 1), although these rules, which became effective July 1, 1943, are applicable to and govern this case. Under the new rules the trial judge is not charged with the function of 'settling' or 'certifying' all transcripts; in the absence of a request for correction of an alleged mistake, the record is transmitted with the certification of the reporter (Rule 4(d), 22 Cal.2d 4) and of the clerk. (Rules 5(d), 8(a), 22 Cal.2d 5-6, 8.) The petition herein discloses that respondents in the main appeal filed a document entitled 'Objection to Settlement of Transcripts, Etc.,' in part on the ground that they did not constitute 'a full and complete transcript of the proceedings'; and that petitioner filed an 'Answer to Objections re Settlement of Transcripts,' in which he stated that he was forwarding to the court 'corrections' to be noted in the reporter's transcript. *The objection on the ground of lack of completeness is no longer tenable, and the remedy of a respondent, if he desires a complete transcript, is to designate the balance thereof.* (Rules 4(b), 5(b), 22 Cal.2d 3, 5.) If, however, corrections have been requested by either party, it is the duty of the trial

judge to hear and determine the request, and thereafter to certify the transcripts, with such corrections, if any, as he may allow. (Rule 8(b), 22 Cal.2d 8-9.)" (*McMahon v. Superior Court, supra,* 29 Cal.2d at pp. 518-519[emphasis added.])

 **\*4**  Bosch cites the language italicized above, finding in it a holding that it is a respondent's duty to make up for omissions in the transcript. We see no such holding. *McMahon* does not concern an appellant's duty to provide an appellate court with the record necessary to determine the claims. The disposition tells the story: the Court issued a peremptory writ of mandate directing the trial court "to determine the request for correction of the transcripts, and thereafter to certify the transcripts as correct." (*McMahon, supra,* 29 Cal.2d at p. 519.)

In *Skoglie,* the appellant designated only those portions of the oral transcript he deemed relevant to the sole issue on appeal. Respondent augmented the record to some extent, but argued that because the Court of Appeal could not examine "the entire cause," it could not find error. *Skoglie* disagreed, noting that under the rules of court, "If an appellant, in his notice of appeal, states the point or points to be raised by him on the appeal, he may designate the portions of the oral proceedings to be transcribed or direct the omission of any portions which he deems unnecessary. If a respondent is not satisfied with the omissions of other portions, he may serve and file a designation of any additional oral proceedings he desires included in the record. (Cal. Rules of Court, rule 4(b).) When a reporter's transcript containing only a portion of the oral proceedings is thereafter certified by the judge or the clerk, it is presumed in the absence of proceedings for augmentation that it includes all matters material to a determination of the points on appeal." ( *Skoglie, supra,* 26 Cal.App.3d at p. 297.)

In support of the later point, *Skoglie* cited California Rules of Court, rule 52, now California Rules of Court, rule 8.163, which provides that "The reviewing court will presume that the record in an appeal includes all matters material to deciding the issues raised. If the appeal proceeds without a reporter's transcript, this presumption applies only if the claimed error appears on the face of the record."

*Skoglie* concluded that "... although respondent contends we are required to review all of the evidence presented to the trial court before any determination can be made that prejudicial error occurred, he apparently has not considered the effect of rule 52. Respondent did not seek to enlarge

EXHIBIT G - Page 6 of 15

Davis v. Robert Bosch Tool Corp., Not Reported in Cal.Rptr.3d (2007)

the record on appeal by filing a counter-designation in the trial court and, apart from the limited augmentation obtained in this court, he has not sought further augmentation of the record, nor has he contended that the testimony of any other witness is relevant to the sole issue raised by appellant. We therefore consider that the record before us is adequate for purposes of review, and that a full consideration of such record meets the constitutional requirements of section 13 of article VI." ( Skoglie, supra, 26 Cal.App.3d at p. 298.)

Bosch's reliance on *Skoglie* misses a critical difference between that case and this one: in *Skoglie,* the appellant designated everything relevant to the sole issue on appeal. Here, Bosch has challenged the sufficiency of the evidence for the jury verdict, which means that *all* the evidence is relevant to its appeal. Evidence sufficient to support the verdict might be found in the testimony of the missing witnesses. We cannot know, and in the absence of such knowledge, we must presume that it is so.

**\*5** An appellant "must affirmatively demonstrate error by an adequate record. In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. '[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented.' [Citation.]" ( Bennett v. McCall (1993) 19 Cal.App .4th 122, 127.)

Bosch could have guaranteed the inclusion of all evidence in the appellate record by requesting transcription in the trial court, or moving to have the tapes marked as exhibits and entered into evidence, or it could have proceeded by settled statement on this appeal. ( Maria P. v. Riles (1987) 43 Cal.3d 1281, 1295.) It did none of those things, and cannot proceed on its sufficiency of the evidence claims.

3. The judgment against the Robert Bosch Company
As we have seen, there were two defendants at trial, Bosch and the Parent. The jury verdicts asked whether Bosch or the Parent, had, for instance, "promise [d] ... not to discharge Kenneth Davis except for good cause?" During preparation of the verdicts, the parties and the court agreed that the liability of the Parent would be a question for the court, to be decided after the verdict was returned.

Post-verdict, counsel for Davis prepared a judgment which included the Parent as a judgment debtor. Bosch and the Parent filed an objection. The court heard argument, and on June 7 signed a judgment which did *not* include the Parent. Davis then filed a motion under Code of Civil Procedure section 473 to correct the judgment by adding the Parent, titling the motion one to correct a clerical error, nunc pro tunc, and asserting that the Parent "was shown to be the employer of Plaintiff by uncontroverted evidence." Bosch and the Parent objected.

At oral argument on July 19, 2005, the court indicated that it would grant Davis's motion, but explained that it was not making a ruling on alter ego, but was merely correcting the judgment to reflect the jury verdict. The minute order notes that the ruling was pursuant to Code of Civil Procedure section 473, and specifies the amendments. As amended, the judgment reads "It appearing by reason of said verdict that plaintiff Kenneth Davis is entitled to judgment against defendant Robert Bosch Tool Corporation or defendant Robert Bosch Corporation," and ordering "Plaintiff Kenneth Davis recovers from Defendant Robert Bosch Tool Corporation or defendant Robert Bosch Corporation the sum of $195,000.00...."

In August, during argument on defendants' motion for costs, Davis argued that since the Parent had been added to the judgment, Davis was the prevailing party. The court noted that the issue of the Parent's liability was still open, and requested additional briefing on the question. Something similar happened at a September hearing. At that hearing, the court deferred the issue until October.

**\*6** On October 25 the trial court issued a written ruling which, under the heading "Alter Ego Theory of Liability and/or Parental Liability of Defendant Robert Bosch Corporation," reads:

> "On July 19, 2005, the Court added 'or Defendant Robert Bosch Corporation' to the June 7, 2005 judgment in order to more adequately reflect the language of the Special Verdict. By adding this language, the Court did not make a finding that Defendant Robert Bosch Corporation was a judgment debtor or that Defendant Robert Bosch Corporation was liable

EXHIBIT G - Page 7 of 15

Davis v. Robert Bosch Tool Corp., Not Reported in Cal.Rptr.3d (2007)

under an alter ego or parental liability theory. Since the conclusion of the trial, the Court expected and requested further evidence and argument regarding those theories of liability. Although Defendant Robert Bosch Tool Corporation and Defendant Robert Bosch Corporation have set forth substantive arguments regarding these issues, Plaintiff's documents never adequately addressed the issue of parental liability. Accordingly, the Court asked for additional briefing, and, as a result held over a determination on the alter ego and/or parental liability issue on at least three occasions. Plaintiff failed to provide such additional support or argument. [¶] The June 7, 2005 judgment against Defendant Robert Bosch Tool Corporation and/or Defendant Robert Bosch Corporation is on appeal. Due to this pending appeal, the Court has now lost jurisdiction to make a determination on the alter ego and parental liability questions. CCP § 916. If jurisdiction had not been lost, based upon the Court's review of the evidence presented at trial, the Court would have concluded that Plaintiff had not satisfied the 'integrated enterprise test' set forth in

🚩 *Laird v. Capital Cities* (1998) 68 Cal.App.4th 727, 737, and, therefore, Defendant Robert Bosch Corporation would not be liable."

In the written ruling and the minute order of that date, the court granted Davis's motion to tax costs, re the Parent, and struck the Parent's Memorandum of Costs.

There were then further proceedings in the trial court, commenced when Davis moved ex parte for a nunc pro tunc correction of the judgment due to an arithmetical mistake in the costs award. A copy of the June 7 judgment, signed by the court, and with the interlineations adding the Parent, was attached to the motion.

Defendants agreed that there was an arithmetical mistake, but opposed the motion on the ground that the judgment was not the correct judgment because it had never been entered as a judgment or served on the parties and because it was contrary to the court's ruling of October 25.

At oral argument on January 6, the Parent asked the court to enter a new judgment which would preserve its appeal rights. The court's January 6 order was that the June 7 judgment be amended nunc pro tunc to change the costs. On January 17, the Parent Corporation filed a new notice of appeal, appealing the January 6 judgment.

On this appeal, the Parent contends that "the January 6, 2006 addition of the Parent Company to the Judgment was legal error." The Parent argues that the evidence was insufficient, and also argues that the amendments to the judgment were not clerical, but substantive, and that the court had no power to make such amendments.

*Timeliness of the Appeal*

 **\*7** There is a threshold issue, the timeliness of the Parent's appeal. Davis argues that the notice of appeal, which was filed on January 17, 2006, was untimely. In Davis's view, the Parent had 60 days from July 19, 2005-the day on which the court amended the judgment nunc pro tunc, on Davis's motion-in which to appeal. In return, the Parent argues that under California Rules of Court, rule 8.104, subdivision (a) (3), it had 180 days from July 19, 2005, to appeal, making its January notice of appeal timely. We agree with the Parent.

The 60 day rule is found in California Rules of Court, rule 8.104, subdivision (a), which provides that "a notice of appeal must be filed on or before the earliest of: (1)60 days after the superior court clerk mails the party filing the notice of appeal a document entitled 'Notice of Entry' of judgment or a file-stamped copy of the judgment, showing the date either was mailed; (2)60 days after the party filing the notice of appeal serves or is served by a party with a document entitled 'Notice of Entry' of judgment or a file-stamped copy of the judgment, accompanied by proof of service; ..."

Here, the only thing served or mailed on July 19 was a copy of the minute order, which is not entitled "notice of entry of judgment." The 60 day rule does not apply. Instead, under California Rules of Court, rule 8.104, subdivision (a)(3), the Parent had 180 days after entry of judgment in which to

EXHIBIT G - Page 8 of 15

Case 2:24-cv-02341-SPG-BFM    Document 3    Filed 03/21/24    Page 107 of 113    Page
ID #:127
Davis v. Robert Bosch Tool Corp., Not Reported in Cal.Rptr.3d (2007)

appeal. The parties agree that (at the earliest) judgment was entered on July 19, 2005.

On re-hearing, the Parent has provided us with the correct calculation under the 180 day rule. When the first day is excluded, and weekends and holidays accounted for, pursuant to California Rules of Court, rule 1.10, the notice of appeal was timely. That is, 180 days from July 19 falls on January 15, a Sunday. The next day was a holiday, Martin Luther King Day. When both Sunday and Monday are excluded, the last day for filing was January 17, and the appeal was timely.

Nor can there be any doubt that the January 17 notice of appeal is sufficient to bring all the issues on the merits before us. "[N]otices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." ( Luz v. Lopes (1960) 55 Cal.2d 54, 59.) Davis has clearly at all times understood that the January 17 notice of appeal is an appeal from the July 19 judgment. He impliedly acknowledged as much when he urged us to find that the notice of appeal was untimely, dated from July 19, and when moved to dismiss the appeal on the ground that the January 17 notice of appeal was not a timely appeal from the July 19 judgment.

*The merits*
We agree with the Parent that the July 19 amendments were not clerical corrections, but a substantive ruling, and were thus outside the court's power. Under Code of Civil Procedure section 473, subdivision (d) "The court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed, ..."

**\*8** " 'The general rule is that once a judgment has been entered, the trial court loses its unrestricted power to change that judgment. The court does retain power to correct clerical errors in a judgment which has been entered....

[Citation.]" ( *Rochin v. Pat Johnson Manufacturing* (1998) 67 Cal.App.4th 1228, 1232.) "An amendment that substantially modifies the original judgment or materially alters the rights of the parties, may not be made by the court under its authority to correct clerical error, ..." ( *In re Candelario* (1970) 3 Cal.3d 702, 705.)

Davis's argument on this issue rests on its contention that the jury found that both Bosch and the Parent had breached their employment contract with Davis and owed him unpaid wages. Not so. The jury was asked whether Bosch *or* the Parent had breached a contract or owed wages, an entirely different matter.

Before the July 17 amendments, the Parent was not a judgment debtor, and could move for costs as a prevailing party. After the amendment, it was a judgment debtor, and could not. The July 17 amendments to the judgment were substantive, not clerical.

Davis also relies on the court's comment that it had only corrected a clerical error. The argument is a peculiar one. The court did make that comment, but it did so while under the misapprehension, induced by Davis, that the ruling did not make the Parent liable on the judgment. If that is indeed Davis's interpretation of the amended judgment, he should have no problem with the result we reach here.

Finally, the Parent asks us to find that it was a prevailing party entitled to costs. That is a matter for the trial court on remand.

Davis's Cross-Appeal

1. The ruling on the unpaid wages award
The jury was instructed that in order to determine damages for breach of employment contract, it must "decide the amount that Kenneth Davis would have earned from [Bosch and the Parent] up to today ... Two, add the present cash value of any future wages and benefits that he would have earned after today for the length of time the employment with [Bosch and the Parent] was reasonably certain to continue. The special verdict form asked "What are Kenneth Davis's damages for breach of employment contract?" and asked the jury to specify past economic lost and future economic loss. The jury put the past lost at $195,000 and the future loss at zero.

The jury was also instructed that to establish his claim for unpaid wages, Davis was required to prove that he worked for Bosch and the Parent, was discharged by Bosch and the Parent, that Bosch and the Parent owed Davis wages under the terms of the employment, and the amount of the unpaid wages. The jury was also instructed that "wages includes all amounts for labor performed by an employee, whether the amount is calculated by time, task, fees, commissions, or other matters."

EXHIBIT G - Page 9 of 15

Case 2:24-cv-02341-SPG-BFM    Document 3    Filed 03/21/24    Page 108 of 113    Page
ID #:128
Davis v. Robert Bosch Tool Corp., Not Reported in Cal.Rptr.3d (2007)

The special verdict asked whether Bosch or the Parent discharged Davis and whether Bosch or the Parent "owe Kenneth Davis wages under the terms of employment?" Having answered both questions "yes," the jury was then asked "What is the amount of unpaid wages?" and answered "$68,205."

**\*9**  Davis's argument references the evidence that he was put on unpaid leave in September 2002, and fired in March 2003. The argument is that the unpaid wages award represented Davis's wages between his suspension in September 2002, and his termination of March 2003; and the award for past economic loss represents amounts owed for the period between Davis's termination and trial. [2]

We simply see nothing in the record which would allow us to agree. The jury was not instructed that past economic losses should be awarded for one time period and unpaid wages awarded for another, and we have no reason to believe that it did so.

### 2. Fees

Davis moved for attorney's fees under Labor Code section 218.5, which provides that "In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action." Davis presented evidence that over 2000 attorney hours had been billed and that $841,695 had been spent in fees. He sought a multiplier of two, based on the risks taken by counsel in pursing the action on a contingency basis, the skill displayed by counsel, and the importance of the case to the public, and sought an award of $1,683,390. The court awarded only $45,350.

Davis contends that the award was an abuse of discretion. He begins his argument by citing the rule that California recognizes the prompt payment of wages due as a fundamental policy. (Smith v. Rae-Venter Law Group (2002) 29 Cal.4th 345, 360.) He then argues that an award of fees under Labor Code section 218.5 should be calculated through the lodestar adjustment method applicable to other kinds of statutory fee awards, such as fees under FEHA or under Code of Civil Procedure section 425.16. With such a calculation, the court determines the lodestar amount

by determining reasonable number of hours spent and the prevailing hourly rate, then may increase or reduce the amount based on such factors as the novelty and difficulty of the questions involved, the skill displayed, the extent to which the litigation precluded other employment by the attorneys, and the contingent nature of the fee award. (Ketchum v. Moses (2001) 24 Cal.4th 1122, 1131-1132.)

Davis argues that the court did not make such a calculation here, but merely applied a mathematical formula, and awarded two-thirds of the award of unpaid wages, which is impermissible. (Press v. Lucky Stores, Inc. (1983) 34 Cal.3d 311, 322-323.)

Even if Davis is correct that the lodestar method applies, we see no abuse of discretion. First, Labor Code section 218.5 did not entitle Davis to fees for prosecuting his entire case, which included causes of action dismissed prior to trial, and causes of action (defamation, age discrimination, and invasion of privacy) on which Davis did not prevail and which would seem to have nothing to do with proof of the wage claim. Much of the trial was occupied with Davis's proof of the existence of an implied contract to terminate only for good cause, and proof that his SPIFF practices were legitimate and that Bosch's investigation was defective, issues that had little to do with the wage claim. A claim for wages owed does not depend on a finding of wrongful discharge. (Gould v. Maryland Sound Industries, Inc. (1995) 31 Cal.App.4th 1137, 1147.) When we presume in favor of the judgment (Levy v. Toyota Motor Sales, U.S.A., Inc. (1992) 4 Cal.App.4th 807, 816), we cannot conclude that the court merely applied a formula, but instead conclude that the court considered the bills and determined the number of hours reasonably spent. We also note that while counsel asked to be compensated at $350 an hour for one plaintiff's lawyer, and $300 an hour for the other, the court was not obliged to accept those requests. (Ibid.)

**\*10**  We agree with Davis that given the amount of the award it is unlikely that the court applied a multiplier, but given that Davis asked the jury for over $3 million, and recovered much less, we do not see that the court abused its discretion in this regard.

### 3. The award of costs to Tharp

*Davis v. Robert Bosch Tool Corp., Not Reported in Cal.Rptr.3d (2007)*

Bosch executive Gary Tharp was a defendant in the case, named only in the cause of action for defamation. In that cause of action, Davis contended that Tharp (and the other defendants) committed the tort by publishing the statements that Davis had been terminated, that Bosch was giving its files to the FBI, and that Bosch employees should distance themselves from Davis; by representing and implying to the industry and prospective employers that Davis was a criminal; and by "adding the further statement by innuendo that [Davis] was not competent to perform his job and carry out his chosen trade, occupation and profession." Tharp prevailed at trial, and later moved for costs of $19,133. The court made that award.

Davis contends that the award was an abuse of discretion. (*Gibson v. Bobroff* (1996) 49 Cal.App.4th 1202, 1209.) He notes that Tharp, one of three defendants, sought one-third of jury fees, expert witness fees, deposition costs, etc., and argues that none of these costs except a first appearance fee and part of Tharp's deposition costs related to Tharp's defense. In Davis's view, Tharp was entitled only to costs solely attributable to his own defense, and was not entitled to costs for anything that also benefited other defendants.

We see no abuse of discretion here. The trial largely involved Davis's activities relating to the SPIFF program and Bosch's investigation of those activities, directly relevant to the statements allegedly made by Tharp, and thus to the defamation claim. Further, we see no support in law for Davis's theory that Tharp is not entitled to costs if the cost also benefited the other defendants. This essentially amounts to a theory that, for instance, when all defendants request a jury, no defendant may recover those costs.

Davis makes two additional arguments concerning expert witness fees. One is that Tharp was not entitled to those costs because his offer to compromise (Code Civ. Proc., § 998) was not reasonable and in good faith. "A plaintiff who does not accept a valid pretrial offer to compromise and who fails to obtain a more favorable judgment or award may be required to pay defendant's expert witness costs, so long as the section 998 offer was reasonable and made in good faith." (*Hartline v. Kaiser Foundation Hospitals* (2005) 132 Cal.App.4th 458, 470-471.) The reasonableness of the offer is determined by an examination of all the circumstances, and is left to the sound discretion of the trial court. (*Ibid.*) Where a defendant obtains a judgment more favorable than its offer, the judgment is prima facie evidence

that the offer was reasonable. (*Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 699.)

**\*11**  Tharp's offer was that Davis would dismiss all claims against him and that each party would bear its own fees and costs. Davis recovered nothing from Tharp, making the offer, which would have spared Davis from paying costs, reasonable.

Davis's other argument about the expert fees is that neither expert was relevant to Tharp's defense. One of the experts testified on damages, surely relevant to any defendant. The other was Michael Robbins, a lawyer and consultant called by Davis, who opined on Bosch's investigation of Davis's malfeasance. As we have noted, the defamation claim was intertwined with the evidence concerning the SPIFF program and the investigation, making that expert's testimony relevant to Tharp. Moreover, our record does not include Robbins's deposition testimony, or the expert declaration relating to him. We thus cannot say what Tharp could have legitimately anticipated regarding Robbins's deposition, and what necessity Tharp saw for participating in that deposition.

Davis also contends that the court erroneously allowed amounts for witness meetings, court equipment, and parking charges. The argument ignores Code of Civil Procedure section 1033.5, subdivision (c)(4), which provides that "[i]tems not mentioned in this section and items assessed upon application may be allowed or denied in the court's discretion." Items not specifically allowable under Code of Civil Procedure section 1033.5, subdivision (a) and not prohibited under Code of Civil Procedure section 1033.5, subdivision (b) may be recoverable in the discretion of the court if reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation. (Code Civ. Proc., § 1033.5, subd. (c)(2).) Whether a cost item was reasonably necessary to the litigation presents a question of fact for the trial court and is reviewed for abuse of discretion. (*City of Anaheim v. Department of Transportation* (2005) 135 Cal.App.4th 526, 534-535; *Applegate v. St. Francis Lutheran Church* (1994) 23 Cal.App.4th 361, pp. 363-364.) Davis's bare argument does not establish abuse of discretion.

Disposition

EXHIBIT G - Page 11 of 15

Davis v. Robert Bosch Tool Corp., Not Reported in Cal.Rptr.3d (2007)

We reverse the judgment as to the Parent, and in all other respects affirm. Gary Tharp and the Parent to recover costs on appeal. All other parties to bear their own costs.

We concur: MOSK and KRIEGLER, JJ.

**All Citations**

Not Reported in Cal.Rptr.3d, 2007 WL 2014301

## Footnotes

1    Bosch's motion to augment the record with the transcript of hearings held on October 18 and 25, 2005, is granted.

2    In a footnote, Davis suggests that the possibility of double recovery was discussed (during argument on the special verdict form, and that the form was drafted to avoid that problem. At the cited pages of the record, counsel and the court certainly had some discussion of double recovery, at least with respect to the age discrimination and wrongful discharge causes of action. However, the court and counsel were working from draft forms which we do not have, so that we cannot really follow the conversation. We certainly cannot say (as Davis argues) that the court and counsel agreed that the form submitted to the jury prevented the jury from awarding a double recovery.

End of Document                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT G - Page 12 of 15

Fred Denenberg v. California Department of Transportation, 2006 WL 5305734 (2006)

2006 WL 5305734 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2019 ALM Media Properties, LLC. All Rights Reserved
Superior Court, San Diego County, California

Fred Denenberg v. California Department of Transportation

No. GIC836582
DATE OF VERDICT/SETTLEMENT: September 16, 2006
TOPIC: EMPLOYMENT - SEXUAL ORIENTATION DISCRIMINATION - EMPLOYMENT - FAILURE TO
ACCOMMODATE

Clerk Claimed Discrimination Based on Disability, Orientation

**SUMMARY:**
RESULT: Verdict-Plaintiff

The jury did not find any discrimination based on sexual orientation. It did, however, find the defendant failed to provide
Denenberg with a reasonable accommodation and discriminated against him on the basis of a disability. The jury awarded
Denenberg $119,000 in economic damages and $25,000 in noneconomic damages, for a total $144,000. The judge awarded
him an additional $490,000 in attorney's fees and $133,000 in costs, and ordered the department of transportation to award him
a retroactive promotion. The promotion will result in an additional $12,000 of annual earnings through his career as well as
upward adjustments to his retirement benefits.

**EXPERT WITNESSES:**
Plaintiff: Brian P. Brinig, J.D., C.P.A.; Damage Analysis; San Diego, CA Christopher Benbo, M.D.; Psychiatry; La Jolla, CA
George Pratt, Ph.D.; Psychology/Counseling; La Jolla, CA Michael A. Robbins; Human Resources Policies; Bell Canyon, CA
Defendant: Mark A. Kalish, M.D.; Psychology/Counseling; San Diego, CA
**ATTORNEYS:**
Plaintiff: Paul D. Jackson; Law Offices of Paul D. Jackson; San Diego, CA (Fred Denenberg); David M. deRubertis; The
deRubertis Law Firm; Woodland Hills, CA (Fred Denenberg)
Defendant: Christopher J. Welsh; California Department of Transportation; San Diego, CA (California Department of
Transportation); Julie A. Jordan; CalTrans Legal Department; San Diego, CA (California Department of Transportation)

JUDGE: Steven R. Denton

RANGE AMOUNT: $100,000-199,999

STATE: California
COUNTY: San Diego

**INJURIES: Denenberg claimed that he suffered emotional distress and sought treatment from a psychologist. He also
sought to recover the income he lost when he took a leave of absence to cope with the distress caused by the way his
employer treated him.**

**Facts:**
In 1998 plaintiff Fred Denenberg, a gay man, was hired by the California Department of Transportation as an office technician,
an entry-level position. He received excellent performance reviews and was promoted to assistant administrator. Starting in

1999, he sought promotion to associate administrator, the next job level above his own. Such a promotion would normally occur in relatively short time, he alleged, but his requests were repeatedly denied. He was told that budgetary constraints had forced the company to put into place a hiring and promotions freeze. When the freeze was lifted on July 1, 2004, Joseph Hull, the deputy director of traffic operations, promised Denenberg that his promotion would be processed.

When Hull had not yet finished processing the paperwork by late August 2004 despite Denenberg's further complaints, Denenberg sought legal counsel. His attorney, Paul Jackson, sent the department's upper management a letter alleging that Denenberg had been the subject of harassment based on his sexual orientation and that the department had failed to promote him because he was gay. Afterward, Denenberg's superiors and co-workers leveled accusations of wrongdoing against him. The alleged wrongdoing included telling a co-worker to "kiss his ass," making derogatory comments about a co-worker's religion, slamming a door in a co-worker's face and acting in a rude manner toward co-workers and management.

In late September 2004, Denenberg, who claimed to be suffering from stress and depression related to his workplace, complained about a sexually related email sent from a co-worker a year earlier. At the instruction of a psychologist, he went on a leave of absence, and the department stopped processing his promotion.

In August 2005, one year after his original stress leave began, Denenberg's psychologist recommended that he be given an accommodation that allowed him to telecommute. Hull did not allow telecommuting, however, and denied the accommodation. The psychologist revised the accommodation to request that Denenberg return to the workplace but that any face-to-face interaction with the co-workers he claimed had retaliated against him be minimized. Hull denied that request as well.

When Denenberg was able to return to work without restriction, the department informed him it had eliminated his position and offered him six other positions that were equivalent or nearly equivalent to his former position. Denenberg declined them all.

Denenberg sued the California Department of Transportation for discrimination and retaliation on the basis of sexual orientation and discrimination and retaliation on the basis of disability. He contended that for a period of about 1.5 years he was harassed based on his sexual orientation; the alleged harassment consisted of perceived sexual advances, derogatory comments about his orientation and a degrading, homophobic email. He claimed that the department's refusal to promote him in September 2004 was in retaliation for the letter his attorney wrote complaining of harassment and discrimination. He also claimed that the department's stated reason for not promoting him--that he went on medical leave--indicated disability discrimination and showed that the company was retaliating against him for seeking accommodation of a disability. He further alleged that when his psychologist approved his return to work with a minimum of interaction with co-workers, there were desks and offices available that could have been used to meet this request.

The defendant denied any wrongdoing. It claimed that the reason Denenberg was not promoted was because he had either failed the promotional exam or did not receive a high enough score for placement. The state budget crises, the department's budget, and the lack of available work prevented promotions for new hires until June 30, 2004. Once the freeze was lifted, the plaintiff was promised a noncompetitive promotion. It contended that it had begun processing a noncompetitive promotion for Denenberg at the time he took his leave but stopped when he was out for almost two years and the department did not know when or whether he would return to work and that, under the Civil Service Act, the promotion could not go through because he was not at work to accept the new appointment. This had implications for his retirement and benefits.

The department also claimed that the request to telecommute was denied because the position required interaction with co-workers and the timely sharing of information. The department noted that over the course of nine months, it offered the plaintiff six alternative positions at the same classification and rate of pay but he refused all of them. Finally, the company denied any knowledge of the claimed harassment.

Before the trial began, the plaintiff dropped the claim that he should have been promoted before 2003. The state had a freeze on promotions and new hires between June 2003 and June 2004.

Fred Denenberg v. California Department of Transportation, 2006 WL 5305734 (2006)

At trial, the defense impeached Denenberg's credibility by attacking his assertion that he had never been involved in any other lawsuits by introducing numerous lawsuits that he had either filed or were filed against him.

The defendant claimed that it was not his workplace problems that caused the plaintiff's medical condition but rather other stressors, such as a tumultuous relationship with his domestic partner who suffered from chronic medical problems. The defendant introduced evidence of domestic discord, including allegations of domestic abuse.

Insurer:

Self insured California Department of Transportation

ALM Properties, Inc.
Superior Court of San Diego County, at San Diego

PUBLISHED IN: VerdictSearch California Reporter Vol. 7, Issue 4

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.